# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

# NEWARK VICINAGE

Leslie S. Gottlieb,
Plaintiff,

v.

Wells Fargo Company Severance Plan,
Wells Fargo & Company,
and
John Does 1–10,
Defendants.

Civil Action No. _____

# COMPLAINT FOR BENEFITS (ERISA §502(a)(1)(B)),

# FIDUCIARY BREACH, RETALIATION, AND

# DISABILITY DISCRIMINATION (NJLAD)

Leslie S. Gottlieb (Pro Se)
464 Liberty Street, Apt 102A
Little Ferry, NJ 07643

Dated: January 23, 2026

**Table of Contents**

I. PRELIMINARY STATEMENT: THE "SHAM RIF" PATTERN......................................................1

II. JURISDICTION AND VENUE ...............................................................................................2

III. PARTIES ................................................................................................................................3

IV. FACTUAL ALLEGATIONS..................................................................................................3

V. COUNTS FOR RELIEF.........................................................................................................10

    COUNT 1 – ERISA §502(a)(1)(B) Wrongful Denial of Benefits ........................................10

    COUNT 2 – ERISA §503 Untimely Determination / Deemed Denial..................................11

    COUNT 3 – ERISA §510 Retaliation / Interference...........................................................13

    COUNT 4 – NJLAD Disability Discrimination (Sham RIF / Failure to Accommodate / Failure to Engage in the Interactive Process) ...................................................................................14

    COUNT 5 – FRAUDULENT MISREPRESENTATION..........................................................15

    COUNT 6 – WAGE PAYMENT VIOLATION (N.J.S.A. 34:11-4.2)..........................................17

    COUNT 7 – WRONGFUL TERMINATION IN VIOLATION OF NEW JERSEY PUBLIC POLICY .............................................................................................................................18

VI. PRAYER FOR RELIEF .......................................................................................................19

DEMAND FOR JURY TRIAL .....................................................................................................20

CERTIFICATION .......................................................................................................................21

## I. PRELIMINARY STATEMENT: THE "SHAM RIF" PATTERN

1. This action challenges Defendant Wells Fargo's willful and systemic practice of using fraudulent Position Eliminations—presented as "Reductions in Force" ("RIFs")—as a pretext to terminate employees with significant medical needs, including those on Qualified Medical Leave.

2. This pattern was recently adjudicated as unlawful in Billesdon v. Wells Fargo Securities, LLC, No. 3:23-cv-160 (W.D.N.C. 2024), where a federal jury awarded $22.1 million in damages after finding that Wells Fargo used a purported "RIF" as a pretext for discriminatory termination.

3. Like the plaintiff in Billesdon, Plaintiff Leslie Gottlieb—a long-tenured Wells Fargo employee—disclosed a serious medical condition requiring accommodation and entered Qualified Medical Leave, only to be immediately targeted for a purported Position Elimination. Despite claiming that Plaintiff's position was eliminated, Wells Fargo continued the same work and reassigned it to another individual, consistent with a pretextual termination.

4. This Complaint seeks ERISA benefits wrongfully denied under the Wells Fargo & Company Severance Plan, statutory penalties for procedural violations, and damages for disability discrimination under a "pattern and practice" theory.

1

5. New Jersey and Third Circuit courts have repeatedly held that employers may not disguise discriminatory terminations as "reductions in force." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449–50 (2005) (pretext may be shown through circumstantial evidence); Marra v. Phila. Hous. Auth., 497 F.3d 286, 302–03 (3d Cir. 2007) (retaliation found where employer used a "reorganization" as a pretext for termination).

6. Plaintiff's allegations mirror these precedents: Wells Fargo terminated Plaintiff during active leukemia treatment, falsely labeled the termination a Position Elimination, and immediately reassigned her work—conduct courts consistently recognize as evidence of discriminatory motive and pretext.

## II. JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiff's ERISA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

8. This Court has supplemental jurisdiction over Plaintiff's New Jersey Law Against Discrimination (NJLAD), wage payment violation, and wrongful termination claims pursuant to 28 U.S.C. § 1367(a), as those claims arise from the same nucleus of operative facts. Plaintiff is not asserting federal ADA claims in this action.

9. Venue is proper under 29 U.S.C. § 1132(e)(2) because Plaintiff resides in New Jersey, the position elimination occurred while Plaintiff was a New Jersey resident, and a substantial part of the events giving rise to the claims occurred in this District.

2

## III. PARTIES

10. Plaintiff Leslie S. Gottlieb resides at 464 Liberty Street, Apt 102A, Little Ferry, NJ 07643.

11. Plaintiff worked for Wells Fargo for 11 years as a Senior Technology Business Systems Consultant in Commercial Banking with a salary of $99,600.

12. Defendant Wells Fargo Company Severance Plan is an employee welfare benefit plan within 29 U.S.C. § 1002(1).

13. Defendant Wells Fargo & Company is the Plan's sponsor and fiduciary.

14. Defendants John Does 1–10 are unknown administrators and decision-makers responsible for the wrongful denial and discriminatory termination.

15. Greg Fiato is a Wells Fargo manager who hired Plaintiff in or about December 2012 and served as Plaintiff's manager during portions of Plaintiff's employment. On February 6, 2024, Fiato was Plaintiff's manager and notified Plaintiff by telephone that Plaintiff was being impacted by a reduction in force/position elimination.

## IV. FACTUAL ALLEGATIONS

16.     In February 2023, Plaintiff's physician, Dr. Robert Connors, approved a medical work-from-home accommodation due to serious neurological conditions (epilepsy and an arachnoid cyst). Wells Fargo accepted and implemented this accommodation.

3

17.     On January 10, 2024, Plaintiff was diagnosed with acute leukemia at Memorial Sloan Kettering Cancer Center ("MSK").

18.     On January 11, 2024, Plaintiff began an approved medical leave of absence, constituting a Qualified Medical Leave under the Wells Fargo & Company Severance Plan ("Plan"). (Ex. A-2)

19.     From January 17, 2024 through March 16, 2024, Plaintiff was hospitalized at MSK for induction and re-induction chemotherapy. From April 19, 2024 through May 14, 2024, Plaintiff was hospitalized at Hackensack University Medical Center for an allogeneic stem cell transplant. (Ex. Y)

19A. Hospital billing records document total billed charges of $1,831,269.66 through January 2026, with additional charges continuing to accrue due to ongoing treatment. (Ex. Y)

19B. Wells Fargo's benefits materials describe certain Wells Fargo-sponsored health plan options as self-insured and administered by UnitedHealthcare. (Ex. Z) Because the plan is self-funded, Wells Fargo bears financial responsibility for covered medical costs, providing a potential motive to interfere with Plaintiff's attainment of severance and other benefits. Courts recognize that high medical costs may support an inference of unlawful interference under ERISA §510. Haberern v. Kaupp Vascular Surgeons, Ltd., 24 F.3d 1491, 1503 (3d Cir. 1994).

20.     On February 6, 2024, while Plaintiff remained hospitalized and on Qualified Medical Leave, Wells Fargo issued a written "Organizational Changes within

4

Commercial Banking" notice stating that Plaintiff's position was being impacted by "either a position elimination or a substantial position change" under the Plan. The notice stated that Plaintiff's Notice Period began February 6, 2024 and would end April 5, 2024. Plaintiff's manager, Greg Fiato, informed Plaintiff by telephone that Plaintiff was being impacted by a Position Elimination. (Ex. S)

20A. The February 6, 2024 notice further stated that, subject to the Extended Absence Policy, Plaintiff's employment would be preserved while on approved leave, and that if Plaintiff were released to return to work within 26 weeks of the leave-begin date, she "will remain eligible for severance benefits under the Wells Fargo & Company Severance Plan." (Ex. S)

20B. The notice also stated that if Plaintiff were released to return to work after 26 weeks but before the expiration of the 24-month Extended Absence period, she "may be eligible to participate in an unpaid job reassignment process," which would not begin until medical release was received and confirmed. (Ex. S)

20C. Key dates for reference include:

• January 10, 2024 – leukemia diagnosis

• January 11, 2024 – Qualified Medical Leave begins

• February 6, 2024 – written notice of Position Elimination; Notice Period begins

• April–May 2024 – allogeneic stem cell transplant

• July 14, 2025 – severance claim submitted

5

• September 30, 2025 – claim denial (not received until October 14, 2025)

• December 2, 2025 – final denial issued

21. Despite Wells Fargo's representation that Plaintiff's position was eliminated, Wells Fargo converted a longtime contractor, Kevin Kawand, into a full-time employee performing substantially the same duties Plaintiff had performed. Mr. Kawand reported to the same manager, performed overlapping work with Plaintiff, and Plaintiff had trained him on portions of her responsibilities. In June 2024, Wells Fargo changed Mr. Kawand's title from Lead Technology Business Systems Consultant (LoanIQ) to VP – Lead Business Execution Consultant (LoanIQ), reflecting a continuation of the same functional role. These facts support a strong inference that the asserted Position Elimination was pretextual and that the work associated with Plaintiff's position continued. (Exs. O-1, O-2).

22.     On June 20, 2024, during a phone call to ▮▮▮▮▮▮▮, a Wells Fargo Displacement Team representative ("Mark") told Plaintiff that severance eligibility required returning to work within 26 weeks and stated that Plaintiff would "never work at Wells Fargo again." Mark also stated that Plaintiff would be ineligible for severance if she remained on long-term disability beyond 24 months. Plaintiff requested that Mark identify the Plan provision(s) supporting these assertions, but no such documentation was provided. (Exs. Q, S, V).

22A. These statements were false. The Plan contains no "26-week requirement," no durational cutoff for severance eligibility, and no requirement that an employee return to work within 26 weeks to qualify for Severance Pay. Reliance on such extra-plan criteria

6

violates ERISA §404(a)(1)(D), which requires fiduciaries to act in accordance with Plan documents. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989).

22B. The Plan's Qualified Medical Leave Displacement provision (Section 2.26) contains no reference to a 26-week rule, a 24-month cutoff, or any similar requirement. Nevertheless, Defendants repeatedly relied on these non-existent criteria in communications with Plaintiff and in denying her severance claim. (Exs. B, C)

22C. Courts consistently hold that benefit denials based on unwritten or non-existent eligibility criteria are arbitrary and capricious. Donahue v. Aetna Life Ins. Co., 853 F.2d 475, 481 (8th Cir. 1988); Denham v. TWA, Inc., 496 F.3d 150, 162 (2d Cir. 2007).

23. Wells Fargo HR Director Tami Burnham later admitted that the "26-week rule" did not exist. (Ex. V)

23A. On June 20, 2024, Mark (last name unknown), a Wells Fargo Displacement Team representative, stated that Plaintiff "must go off long-term disability before 24 months" to be eligible for severance and that Plaintiff "will never work there again." These statements contradicted the February 6, 2024 notice and the Plan. (Ex. S)

23B. The February 6, 2024 notice expressly stated that employment would be preserved during approved leave and that benefits would continue if premiums were paid. It also stated that employees released to return to work after 26 weeks "may be eligible" for reassignment—not that they were ineligible for severance. (Ex. S)

7

23C.  On November 13, 2024, Senior Employee Relations Consultant Laquisha Hill (███████) told Plaintiff that long-term disability "expires after 24 months," that Plaintiff "would no longer be eligible for severance then," and that Plaintiff's employment "terminates then." Hill also stated she was unsure whether Plaintiff would be eligible for severance if released after approximately 23 months and that "Employee Care needs to look into it," but Plaintiff received no follow-up from Employee Care. These assertions were not supported by, and contradicted, the written Plan. (Ex. V)

23D. These communications demonstrate that Wells Fargo representatives repeatedly relied on non-plan criteria—including alleged durational cutoffs and employment-termination assertions—to discourage Plaintiff from pursuing benefits and to justify denial, rather than administering the Plan in accordance with its written terms.

23E. Plaintiff alleges that these misrepresentations materially interfered with her ability to pursue benefits, created confusion regarding her rights, and tainted the claims process.

23F. Neither the Plan nor the Summary Plan Description contains any reference to a "26-week rule," any durational cutoff for severance eligibility, or any requirement that an employee return to work within 26 weeks to qualify for Severance Pay. Plaintiff reviewed the Plan and SPD in full, and no such provision exists. Defendants nevertheless relied on this non-existent rule when communicating with Plaintiff and when denying her claim

24. Plaintiff submitted a severance claim on July 14, 2025, triggering a 90-day determination deadline of October 11, 2025. (Exs. U, T)

8

25. Defendants issued a denial dated September 30, 2025, but delivered it only via secure email. Plaintiff did not receive or become aware of the denial until October 14, 2025—after the deadline—and Defendants issued no timely extension notice. A paper copy was sent only after Plaintiff requested a status update, and it was sent without a signature required. (Exs. T, U)

26. On December 2, 2025, Wells Fargo issued a final denial, exhausting administrative remedies. (Ex. D)

27. On September 15, 2025, the New Jersey Department of Labor and Workforce Development, Wage Collection Section, acknowledged receipt of Plaintiff's wage complaint against Wells Fargo and assigned Wage Collection case number WC-1135-0825-GRA, advising that the matter would be processed for a Wage Collection proceeding and that a summons/complaint would issue when scheduled. (Ex. N)

28. On December 11, 2025, Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 524-02026-0525, alleging disability discrimination, failure to accommodate, and retaliation. The EEOC issued a Notice of Right to Sue on December 17, 2025, but rescinded and vacated that Notice on December 18, 2025, and reopened the charge at Plaintiff's request; the EEOC proceeding remains pending. Plaintiff is not asserting claims under the Americans with Disabilities Act ("ADA") in this action at this time and will seek leave to amend if an effective Right-to-Sue issues and amendment is appropriate.

## V. COUNTS FOR RELIEF

### COUNT 1 – ERISA §502(a)(1)(B) Wrongful Denial of Benefits

29. Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

29A. Plaintiff submitted a claim for Severance Pay under the Wells Fargo & Company Severance Plan on July 14, 2025, based on her February 6, 2024 written notice of a Position Elimination, which constitutes a Qualifying Event under the Plan. Plaintiff exhausted all administrative remedies when Defendants issued a final denial on December 2, 2025. (Exs. U, D)

29B. Plaintiff met all eligibility requirements for Severance Pay under the Plan, including:

- being a Regular Employee of a Participating Employer;

- being on an approved Qualified Medical Leave at the time of the Qualifying Event;

- experiencing a Qualified Medical Leave Displacement following a Position Elimination;

- satisfying all service requirements based on her Continuous Service Date; and

- remaining within the Plan's Severance Eligibility Period framework.

(Exs. B, C, S)

10

29C. Defendants wrongfully denied Plaintiff Severance Pay by applying criteria that do not appear in the Plan, including a fabricated "26-week rule" and alleged durational cutoffs tied to long-term disability status. These extra-plan requirements contradict the Plan's written terms and were repeatedly used to deny Plaintiff's claim. Reliance on non-existent eligibility criteria is arbitrary, capricious, and contrary to ERISA's requirement that fiduciaries act "in accordance with the documents and instruments governing the plan." 29 U.S.C. §1104(a)(1)(D).

29D. Defendants further misapplied Plan provisions by treating Plaintiff's Qualified Medical Leave as a basis to deny benefits, despite Plan Section 2.26 expressly providing severance eligibility for employees who experience a Qualified Medical Leave Displacement and are not returned to their prior position or offered a non-Substantial Position Change.

29E. As a direct result of Defendants' improper denial, Plaintiff was deprived of Severance Pay owed under the Plan. Plaintiff's Severance Pay entitlement is 22 weeks of Covered Pay at $1,915.38 per week, totaling $42,138.36. Pursuant to ERISA §502(a)(1)(B), Plaintiff seeks judgment awarding all benefits due under the Plan, together with pre-judgment and post-judgment interest and such other relief as the Court deems just and proper.

**COUNT 2 – ERISA §503 Untimely Determination / Deemed Denial**

30. Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

11

30A. Plaintiff submitted a severance-benefits claim on July 14, 2025. Under ERISA's claims-procedure requirements and the Plan's obligations, Defendants were required to issue a timely written benefit determination (or a valid written extension notice) within the applicable deadline, which fell on October 11, 2025. (Ex. T)

30B. Defendants failed to furnish Plaintiff a written notice of benefit determination within the required time. Although Defendants generated a denial letter dated September 30, 2025, Defendants did not deliver it to Plaintiff until October 14, 2025—after the deadline—and Defendants did not issue any timely written extension notice. Because the determination was not furnished to Plaintiff until after the deadline, Defendants failed to provide a timely determination as required by ERISA claims procedures. (Exs. T, U)

30C. Under 29 C.F.R. §2560.503-1(l)(1), when a plan administrator fails to establish or follow claims procedures consistent with the regulation (including by failing to timely furnish a determination), the claimant is deemed to have exhausted administrative remedies and may proceed to court.

30D. As a result of Defendants' untimely determination and claims-procedure violations, Plaintiff is deemed to have exhausted administrative remedies and is entitled to appropriate relief, including (as applicable) de novo judicial review of the benefit denial and equitable relief warranted by Defendants' procedural violations. *See Habetz v. Condon*, 224 F.3d 195, 211–12 (3d Cir. 2000).

31. These claims-procedure violations warrant relief under ERISA, including appropriate equitable relief, attorneys' fees and costs as permitted, and such other relief as the Court deems just and proper.

### COUNT 3 – ERISA §510 Retaliation / Interference

32. Defendants utilized a pretextual position elimination to interfere with Plaintiff's attainment of severance benefits, specifically targeting her due to her high medical costs (approximately $2M) and disability status in violation of ERISA §510, 29 U.S.C. §1140; *Eichorn v. AT&T*, 248 F.3d 131, 141 (3d Cir. 2001) (circumstantial evidence shows interference motive). (Exs. S, Z, Y)

33. Wells Fargo's financial motive to deny Plaintiff severance is documented and extraordinary. Plaintiff's severance entitlement is 22 weeks × $1,915.38/week = $42,138.36. (Exs. H, K.) In addition, Plaintiff has ongoing long-term disability benefits (including a gross monthly LTD benefit of $5,611.66, subject to offsets and policy terms), and Plaintiff's leukemia treatment generated total documented billed medical charges of $1,831,269.66 through January 2026. (Ex. Y.) Wells Fargo's benefits materials describe certain Wells Fargo-sponsored group health benefit options as self-insured and administered by third-party claims administrators. (Ex. Z.)

34. Courts also recognize that high medical costs can motivate unlawful interference. *Haberern v. Kaupp Vascular Surgeons, Ltd.*, 24 F.3d 1491, 1503–04 (3d Cir. 1994). Plaintiff's leukemia treatment approximated $2 million, providing a strong financial motive for Defendants' actions; *Dewitt v. Penn-Del*, 106 F.3d 514, 522 (3d Cir. 1997)

13

(employer violated §510 to avoid benefits); *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 140 (1990) (firing to avoid benefits unlawful).

34A. Plaintiff's allegations of extraordinary medical severity and cost—supporting the inference of Defendants' financial motive to interfere with Plaintiff's attainment of severance and other benefits—are documented by Plaintiff's hospitalization and diagnosis records and related itemized billing records from Hackensack University Medical Center and Memorial Sloan Kettering and are summarized in Plaintiff's Medical Severity and Treatment Timeline (Ex. Y).

## COUNT 4 – NJLAD Disability Discrimination (Sham RIF / Failure to Accommodate / Failure to Engage in the Interactive Process)

35. Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

36. Plaintiff is disabled/handicapped within the meaning of NJLAD, and Wells Fargo knew of Plaintiff's disability and need for reasonable accommodation, including during Plaintiff's leukemia diagnosis and hospitalization.

37. Prior to Plaintiff's January 2024 leukemia diagnosis and hospitalization, Plaintiff was able to perform the essential functions of her position with reasonable accommodation, including Wells Fargo's previously approved work-from-home accommodation. Plaintiff therefore alleges she was a qualified employee under NJLAD, i.e., able to perform the essential functions of the job with or without reasonable accommodation. Victor v. State, 203 N.J. 383, 410–11 (2010).36. After learning of Plaintiff's disability and accommodation needs, Wells Fargo failed to engage in the required interactive process

14

and failed to provide reasonable accommodation. *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 398 (App. Div. 2002). (Exs. S, Q)

38. Wells Fargo's stated "RIF"/position elimination rationale was pretextual, including because the work continued and Plaintiff's role was effectively continued and/or backfilled, supporting an inference of disability discrimination. *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 449–50 (2005); *Grande v. Saint Clare's Health Sys.*, 230 N.J. 1, 19–20 (2017). (Ex. S)

39. By the acts alleged, Wells Fargo discriminated against Plaintiff because of disability/handicap in violation of NJLAD, causing economic loss and emotional distress, and entitling Plaintiff to all available NJLAD remedies, including compensatory damages, punitive damages (as permitted), attorneys' fees, and costs.

## COUNT 5 – FRAUDULENT MISREPRESENTATION

40. Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

40A. Defendants, through the Wells Fargo & Company Severance Plan and the individuals responsible for communicating Plan terms and administering severance determinations, acted in a fiduciary capacity when advising Plaintiff regarding eligibility for Severance Pay. These representatives, including members of the Displacement Team and Employee Relations, were responsible for interpreting and communicating the Plan's terms and were therefore required to act solely in accordance with the Plan documents and in the best interests of Plan participants. (Exs. U, D, B, C)

15

40B. Defendants, through their agents and representatives, knowingly or recklessly made material misrepresentations regarding Plaintiff's eligibility for Severance Pay. These misrepresentations included repeated assertions that Plaintiff was required to return to work within "26 weeks" to qualify for severance benefits (the "26-week rule"), and that Plaintiff would be ineligible for severance if she remained on long-term disability beyond 24 months. These statements were false, were not contained in any Plan document, and directly contradicted the written terms of the Plan. (Exs. Q, V)

40C. Plaintiff reasonably relied on these misrepresentations to her detriment. The false statements confused Plaintiff's rights under the Plan, interfered with her ability to timely pursue and present her claim for Severance Pay, and prejudiced her ability to develop the administrative record. Plaintiff's reliance was reasonable because the statements were made by individuals presented as authoritative sources of Plan information and because Plaintiff was never provided any written Plan language supporting the asserted requirements. (Exs. Q, V, T)

40D. Defendants' conduct constitutes a breach of fiduciary duty under ERISA, including the duty of loyalty and the duty to act in accordance with Plan documents. ERISA §404(a)(1)(D) requires fiduciaries to administer the Plan "in accordance with the documents and instruments governing the plan." Defendants' reliance on non-existent eligibility criteria and their dissemination of false information regarding Plan terms constitute actionable fiduciary misrepresentations under ERISA §502(a)(3). Varity Corp. v. Howe, 516 U.S. 489, 506 (1996).

40E Plaintiff seeks appropriate equitable relief under ERISA §502(a)(3), including relief necessary to remedy the effects of Defendants' fiduciary misrepresentations, to prevent Defendants from benefiting from their misconduct, and to ensure that Plaintiff receives the benefits and protections to which she is entitled under the Plan, together with such other relief as the Court deems just and proper.

### COUNT 6 – WAGE PAYMENT VIOLATION (N.J.S.A. 34:11-4.2)

41.    Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

42.    Wells Fargo's written Severance Plan and the February 6, 2024, written notice of Position Elimination constituted a clear, written promise of compensation triggered by the Qualifying Event affecting Plaintiff. Under the Plan's Schedule, Plaintiff was entitled to 22 weeks of Severance Pay, totaling $42,138.36, based on her weekly Covered Pay. (Exs. B, C, S, H, K)

43.    Defendants' refusal to pay Plaintiff the Severance Pay owed following the Position Elimination constitutes an unlawful withholding of earned compensation in violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.2.

44.    New Jersey courts recognize that severance benefits promised in writing may constitute "wages" recoverable under the Wage Payment Law. Rosen v. Smith Barney, Inc., 393 N.J. Super. 578, 586–87 (App. Div. 2007).

45.    New Jersey courts further hold that once compensation is earned or triggered under written terms, it is recoverable under the Wage Payment Law. Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385, 393–94 (App. Div. 2000).

17

46.     Plaintiff seeks all relief available under the New Jersey Wage Payment Law, including unpaid wages, statutory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT 7 – WRONGFUL TERMINATION IN VIOLATION OF NEW JERSEY PUBLIC POLICY

47.     Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

48.     This claim is pled in the alternative to Plaintiff's statutory causes of action and applies only to the extent the Court determines that statutory remedies are unavailable or inadequate to fully vindicate the public policies at issue.

49.     New Jersey public policy—expressed in the New Jersey Law Against Discrimination, the Family Leave Act, and controlling New Jersey Supreme Court precedent—prohibits terminating an employee because of disability, serious medical treatment, or the exercise of legally protected rights relating to medical leave and accommodation. Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980).

50.     Plaintiff alleges that Defendants terminated her employment while she was undergoing active leukemia treatment and on Qualified Medical Leave, and that Defendants used a purported Position Elimination as a pretext for disability-based termination.

51.     Defendants' conduct violated a clear mandate of public policy and constitutes wrongful discharge under New Jersey law.

18

52.     As a direct and proximate result of Defendants' wrongful discharge, Plaintiff suffered economic losses and other damages for which Defendants are liable.

53.     Plaintiff seeks all relief available for this Count, including compensatory damages, attorneys' fees and costs where permitted, and such other relief as the Court deems just and proper.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and award the following relief:

A. Award Plaintiff all benefits due under the Wells Fargo & Company Severance Plan pursuant to ERISA §502(a)(1)(B), including Severance Pay in the amount of $42,138.36, representing 22 weeks of Covered Pay at $1,915.38 per week, together with pre-judgment and post-judgment interest.

B. Award appropriate equitable relief under ERISA §502(a)(3), including relief necessary to remedy Defendants' fiduciary misrepresentations, prevent unjust enrichment, and ensure compliance with the Plan's written terms.

C. Award statutory penalties under 29 U.S.C. §1132(c) for Defendants' failure or refusal to furnish required Plan documents and information, together with such other relief as the Court deems just and proper.

D. Award compensatory damages under the New Jersey Law Against Discrimination for economic loss, emotional distress, and all other harm caused by Defendants' discriminatory conduct.

E. Award punitive damages under the New Jersey Law Against Discrimination to the extent permitted by law.

F. Award unpaid wages, statutory damages, attorneys' fees, and costs under the New Jersey Wage Payment Law.

G. Award damages for wrongful discharge in violation of New Jersey public policy, pled in the alternative.

H. Award Plaintiff her reasonable attorneys' fees, costs, and expenses as permitted by ERISA, NJLAD, the Wage Payment Law, and other applicable authority.

I. Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable, including Counts 4, 6, and 7.

20

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and

correct.

Executed on January 23, 2026, in Little Ferry, New Jersey

/s/ Leslie S. Gottlieb

Leslie S. Gottlieb

Pro Se Plaintiff

21