EXHIBIT LIST (Filed with Complaint)

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY - NEWARK VICINAGE

| Exhibit | Filename | Description |
|---|---|---|
| A-2 | Exhibit_A-2_FMLA_Approved_2024-01-11.pdf | Lincoln Financial Group leave approval letter dated January 11, 2024; approves medical leave of absence from January 11, 2024 through February 8, 2024 |
| B | Exhibit_B_WellsFargoSeverancePlan2024.pdf | Wells Fargo Company Severance Plan effective January 1, 2024, including eligibility definitions and claims/appeals provisions |
| C | Exhibit_C_Pages_F3-F10_SPD_Document.pdf | Severance Plan Summary Plan Description (SPD) excerpts, pages F-3 to F-10; includes Disqualifying Events, Qualifying Event, Qualified Medical Leave Displacements, and Filing a |

EXHIBIT LIST (Filed with Complaint)

| Exhibit | Filename | Description |
|---|---|---|
| | | Claim provisions cited in September 30, 2025 denial |
| D | Exhibit_D_WellsFargoAppealDenial_2025-12-02.pdf | Wells Fargo severance appeal decision letter dated December 2, 2025; final appeal determination |
| H | Exhibit_H_SeveranceCalculation.pdf | Severance calculation worksheet showing biweekly pay rate ($3,830.77), weekly rate ($1,915.38), and 22-week severance computation totaling $42,138.36 |
| K | Exhibit_K_PayslipPayroll.pdf | Payroll record/payslip reflecting biweekly pay ($3,830.77) used to calculate weekly rate ($1,915.38) and severance basis |
| N | Exhibit_N_NJ_DOL_Letter_2025_09-15.pdf | New Jersey Department of Labor and Workforce Development Wage Collection Section letter dated September 15, 2025 |

EXHIBIT LIST (Filed with Complaint)

| Exhibit | Filename | Description |
| --- | --- | --- |
| | | assigning wage-complaint case no. WC-1135-0825-GRA (Leslie Gottlieb v. Wells Fargo Bank) and advising the matter is being processed for a Wage Collection proceeding. |
| O | Exhibit_O-1_Kevin-Kawand-Posts.pdf, Exhibit_O-2_Kevin-Kawand-Profile.pdf | Materials regarding alleged contractor backfill/replacement (profile and related posts) relevant to displacement/RIF circumstances. |
| Q | Exhibit_Q_26Week_Rule_Mark_Emails.pdf | Email records regarding the 26-week rule/severance communications, including statements attributed to Wells Fargo personnel and follow-up correspondence |
| S | Exhibit_S_WellsFargo_Displacement_Letter_2024-02-06.pdf | Wells Fargo Displacement/Organizational Changes letter dated |

EXHIBIT LIST (Filed with Complaint)

| Exhibit | Filename | Description |
|---|---|---|
|  |  | February 6, 2024; includes Notice Period dates (February 6–April 5, 2024), medical leave status references, and extended-absence/reassignment information |
| T | Exhibit_T_Secure_Email_Timeline.pdf | Secure email delivery timeline documentation for severance claim determination period (July 14–October 14, 2025), including October 11, 2025 deadline and October 13–14, 2025 delivery evidence |
| U | Exhibit_U_SCPP_claim_response_2025-09-30.pdf | September 30, 2025 severance claim response/denial letter referencing claim received July 14, 2025, and appeal-rights notice |

EXHIBIT LIST (Filed with Complaint)

| Exhibit | Filename | Description |
| --- | --- | --- |
| V | Exhibit_V_Verbal_Admission_Affidavit.pdf | Signed 28 U.S.C. § 1746 declaration dated Nov. 30, 2025 regarding (1) June 20, 2024 Displacement Team statements, (2) Tami Burnham's correction, (3) Nov. 13, 2024 Laquisha Hill statements concerning alleged 24-month LTD/severance eligibility, and (4) Sept. 30, 2025 denial delivery delay (received Oct. 14, 2025) and reference to a "26-week rule." |
| Y | Exhibit_Y_Medical_Timeline.pdf | Medical Treatment Timeline and Charges (Summary) compiled from MSK and Hackensack records/billing; includes early January 2024 diagnostic workup/testing (testing 1/3/2024; AML diagnosis 1/10/2024) with |

EXHIBIT LIST (Filed with Complaint)

| Exhibit | Filename | Description |
|---|---|---|
| | | diagnostic charges included in the totals. Summarizes MSK care (1/3/2024–3/16/2024) and Hackensack stem cell transplant hospitalization (4/19/2024–5/14/2024), plus related outpatient services; total documented billed charges through January 2026: $1,831,269.66 (ongoing). |
| Z | Exhibit_Z_Wells_Fargo_Self_Funded.pdf | ERISA plan documentation showing self-funding arrangement for United HealthCare benefits |

**Leslie S. Gottlieb**

**v.**

**Wells Fargo Company Severance Plan; Wells Fargo & Company; John Does 1–10.**

Civil Action No. TO BE ASSIGNED

EXHIBIT LIST (Filed with Complaint)

# EXHIBIT LIST

**TOTAL: 16 Exhibits (Exhibits A-2, B, C, D, H, K, N, O-1, O-2, Q, S, T, U, V, Y, Z)**

Date: January 23, 2026

s/ Leslie S. Gottlieb

*Leslie S. Gottlieb*

Leslie S. Gottlieb, Pro Se

464 Liberty Street, Apt 102A

Little Ferry, NJ 07643



Lincoln Financial Group
Leave Service Department
PO Box 49410
Charlotte, NC 28277

January 11, 2024

Ms. LESLIE GOTTLIEB

██████████████████
████      ██████

RE:  Wells Fargo & Company
     Leave Approval with Disability Benefit Claim
     ████████████████████████████████████

| | |
|---|---|
| ***Why You and Your Manager Are Receiving This Notice*** | Your request for a leave of absence due to your own medical condition has been approved from **January 11, 2024** through **February 8, 2024**.<br><br>A decision regarding your Short-Term Disability benefit claim will be communicated seperately.<br><br>**Managers, please be sure to read this letter and refer to the important Manager Information section below for next steps.** |
| ***What You Need to Know*** | The Family & Medical Leave Act (FMLA), state family or medical leave, or both provide job protection while you are absent from work through your **February 8, 2024** as referenced above.<br><br>State leave will run at the same time with your federal leave entitlement when permitted. |
| ***What You Need to Do*** | **Contact** your Lincoln Financial Group representative prior to February 8, 2024 if you will need additional leave.<br><br>**If you are able to return to work at the end of the current leave period:**<br><br>• **Contact** your manager at least five (5) business days prior to February 8, 2024 and schedule your return to work, to ensure system access is activated and you are paid timely after your return.<br><br>• **Provide** Lincoln Financial Group with a release to return to work note from your health care provider when returning from medical leave if applicable. Do not give your return to work note/release or other medical information to your |

COM13_WellsFargo - ████████

manager.

| | |
|---|---|
| ***What Happens Next*** | Lincoln Financial Group will continue to update you on your status throughout the course of your absence. |
| ***Questions*** | If you have any questions, contact your Lincoln Financial Group representative using the information provided below.<br><br>You may also access www.mylincolnportal.com, to check the status of your request. First time users will need to create a login using the Company Code "Wells." |
| ***Manager Information*** | You are receiving a copy of this letter to update you on the status of your employee's leave.<br><br>**<u>What you need to do:</u>**<br>**Review and complete applicable action items outlined in Managers:  Leave of Absence Guide article in HR Services & Support**.  You can either use the search function in HR Services & Support or go to HR Services & Support, use the HR Information tab at the top of the page, go to time and absence on the left-hand navigation bar, then go to leave of absence on left-hand navigation bar and locate article entitled Managers: Leave of Absence Guide.<br><br>**<u>What you need to know:</u>**<br>Lincoln Financial Group will continue to provide updates on any status changes throughout your employee's leave.<br><br>Review all communications related to your employee's leave and perform any actions as requested as soon as possible.<br><br>**DO NOT** TAKE ANY CORRECTIVE ACTION OR REPLACE THE EMPLOYEE'S POSITION UNTIL CONSULTING WITH ER SOLUTIONS FIRST.<br>Complete the Employee Relations eform to request the consultation.<br><br>If you have any questions, contact the Lincoln Financial Group representative using the information provided in the signature line below. |

Sincerely,

JOCELYNN KONON
Office Phone: ██████████████
Office Fax: ████████
Email: ████████████

Attachments: Medical Leave Guide for Team Members

COM13_WellsFargo - ████████

# Medical Leave guide for employees

**WELLS FARGO**

This guide explains your responsibilities as an employee while you are on a leave of absence.

| At the beginning of your leave | *Notify* your manager of the time you have requested for your leave and your expected return date, if known. |
|---|---|
| | *Record* accrued unused PTO in the absence application of Workday for any short-term disability (STD) waiting period, if applicable. |
| | *Refer* to the Paid Time Off (PTO) section under HR Services & Support for more information, if you need additional time away from work outside of your leave of absence(s). |
| | *Give* your health care provider a copy of the Medical Certification Form and ask him or her to complete, date and sign it, and return to our claim and leave administrator, Lincoln Financial Group, as directed in its communications. |
| | *Apply* for State Disability Insurance (SDI) if you work in a participating state and forward a copy of your first SDI pay stub to our claim and leave administrator, Lincoln Financial Group. |
| | *Review* all correspondence sent to you by our claim and leave administrator, Lincoln Financial Group, and perform any actions as requested. |
| | Your commuter benefit election (including parking, train, bus, subway, ferry or vanpool) is typically canceled when you go on a leave of absence. If you have any questions, log into your HealthEquity account on the HR Services & Support site or go to ███████████████████, or call HealthEquity at ██████████. |
| | *Ensure* you have a delegate established in My Concur and that all outstanding transactions are addressed. |
| During your leave of absence | *Stay* in contact with your manager at key points during your leave.  It is important for you to participate in two-way conversation(s) with your manager to help: <br>• Clarify when or if you will be able to return to work on the estimated return to work date <br>• Inform your manager of any help or accommodation that may allow you to return to work sooner <br>• Explain what kind of accommodation you will need when you return to work, if any |
| | *Verify* that your health care provider has submitted all the paperwork that our leaves and claims administrator requires to make a decision on the approval of your leave. |
| | *Read* all communications you receive from our leaves and claims administrator.  Be sure to review all enclosures to understand your rights and responsibilities. |
| | *Review* your approved-through date. If you are unable to return by the approved-through date: <br>• Contact our claim and leave administrator at ██████████ ██████████, to discuss extending your leave, which will require updated information from the health care provider. Refer to the medical certification guidelines under the Medical Leave section of the Employee Handbook for more information <br>• Advise your manager that you have requested an extension. |
| | *Record* accrued unused PTO in the absence application of Workday if your leave of absence is taken intermittently (Medical and Maternity Leaves only). |

*Make* timely payments of your benefit premiums. You will receive a letter from the HR Service Center telling you how to continue your health and welfare benefit coverage and how to make payments while on an unpaid leave. If you have any questions about this process, contact the HR Service Center at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

*Remember* if you have a court order that requires garnishment of your wages the court may allow for an exemption to the garnishment while you are on short-term disability. You may want to contact the court that issued the order to determine if an exemption is available to you and the next steps to take in order to request the exemption with the court.

Please note, this type of exemption, generally, does not apply to child or spousal support orders.

*Contact* your manager if you would like to take a one-time lump-sum payout of accrued, unused PTO during your approved leave of absence (this does not apply to employees on a Paid Parental Leave).

| | |
|---|---|
| **Your return from leave** | *Contact* your manager at least 5 calendar days *before* your return from leave date to confirm you will be returning as planned. |

*Obtain* a release to return to work note from your health care provider on or before your return; write your name and employee ID:
- fax it to Lincoln Financial Group at ▮▮▮▮▮▮▮▮▮ or mail it to:
  The Lincoln National Life Insurance Company Disability Claims
  PO Box 49410
  Charlotte, NC 28277

*Complete* the following if your health care provider has released you to return from leave with restrictions, including a reduced work schedule:
- Contact your manager prior to your return, to advise him or her that you have restrictions so a determination can be made about accommodating them
- Contact our leaves and claims administrator, Lincoln Financial Group, at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, to report your restrictions
- Ensure your release to return to work note outlines your restrictions

*Confirm* with your manager that he or she has reported your return to the HR Service Center or through Workday unless you are returning with medical restrictions or on a reduced work schedule.

*Contact* Accommodations Management at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ if you and/or your manager need assistance exploring accommodations that can be made available to assist you with your return to work efforts. Accommodations Management is a resource available to employees with disabilities or medical restrictions to explore successful solutions and reasonable accommodations to successfully perform their jobs.

*Reapply* for commuter subsidies, which include but are not limited to car allowance, parking allowance, or commuter express programs.

*Reenroll* in your commuter benefit elections (including parking, train, bus, subway, ferry or vanpool) at https://participant.wageworks.com or by calling HealthEquity at 1-877-924-3967, 24 hours a day, 7 days a week, excluding some holidays.

*Remember,* if you currently have an Internal Commercial Card, your account has been systematically deactivated immediately upon the beginning of your leave. After you have returned from leave, the card will be systematically reactivated if you are compliant with all Internal Commercial Card policies and procedures. If the account has been closed by Internal Commercial Card, it will not be reopened.

AMENDMENT AND RESTATEMENT
OF THE WELLS FARGO & COMPANY
SEVERANCE PLAN
Effective January 1, 2024

WHEREAS, Wells Fargo & Company (the "Company") maintains the Wells Fargo & Company Severance Plan (the "Plan") for the exclusive benefit of its eligible employees;

WHEREAS, the Company desires to amend and restate the Plan effective on January 1, 2024;

WHEREAS, pursuant to section 7.1 of the Plan, the Company has the right to amend the Plan;

WHEREAS, pursuant to the resolutions of the Wells Fargo & Company Board of Directors adopted on June 27, 2017, and as amended on December 14, 2021, and the Delegation and Authorization adopted by the Head of Human Resources on December 24, 2022 (collectively, the "Delegations"), the undersigned Human Resources Senior Executive has been delegated the authority to execute any restatements, amendments, and resolutions to the Plan as long as such action does not increase the cost of the Plan by $500,000 per year; and

WHEREAS, the undersigned Human Resources Senior Executive has reviewed this amendment and reasonably determined that such amendment will not increase the cost of the Plan by $500,000 or more per year and that the Plan should be amended.

NOW, THEREFORE, the Plan is hereby amended and restated effective for any Participant who receives written notice of a Qualifying Event on or after January 1, 2024, as set forth in the attached amended and restated document described as Exhibit 1. The Plan amendment, as set forth in the attached amended and restated document described as Exhibit 1, also provides the sole source of severance benefits for (i) Participants who have received formal written notices of Qualifying Events dated before January 1, 2024 with Notice Periods that end on or after January 1, 2024 and (ii) Participants whose Severance Eligibility Period is scheduled to end on or after January 1, 2024. Capitalized terms shall have the meanings as set forth in the Plan.

IN WITNESS WHEREOF, the undersigned has adopted the amended and restated Wells Fargo & Company Severance Plan (Effective January 1, 2024), as set forth herein.

WELLS FARGO & COMPANY,

DocuSigned by:

*Gerri Parker*

F3B692B9AC9B4E5...

Gerri Parker
Human Resources Senior Executive

Date: 12/28/2023

The Wells Fargo & Company Severance Plan
(Effective January 1, 2024)

## ARTICLE I
## PURPOSE

The Wells Fargo & Company Severance Plan (hereafter referred to as the "Plan") provides post-termination severance benefits to eligible Employees who are subject to a Qualifying Event as defined in this Plan to assist them while locating other positions of employment. The provisions of this Plan, as contained in this document, are an amendment and restatement of the Wells Fargo & Company Severance Plan in effect through December 31, 2023. (See Article 8.9, History of the Plan.) It is intended that the Plan be administered in compliance with all applicable laws, rules, regulations, and guidelines. (See Article VIII, Miscellaneous.)

This Plan is effective January 1, 2024 (the "Effective Date") and will apply to (i) Participants who have received formal written notices of Qualifying Events dated before January 1, 2024 with Notice Periods that end on or after January 1, 2024; (ii) Participants whose Severance Eligibility Period is scheduled to end on or after January 1, 2024; and (iii) Participants who have received formal written notices of Qualifying Events dated on or after January 1, 2024. No person is authorized to make promises regarding benefits under the Plan except as provided in the Plan.

## ARTICLE II
## DEFINITIONS

2.1    Affiliate. An Affiliate is a business entity which is under "common control" with the Company or which is a member of an "affiliated service group" that includes the Company, as those terms are defined in section 414(b), (c) and (m) of the Internal Revenue Code ("IRC"). A business entity shall also be treated as an Affiliate if, and to the extent that, such treatment is required by regulations under IRC section 414(o). In addition to said treatment, the Company may, at its discretion, by action of the Board Chair and/or the Chief Executive Officer and President of the Company, designate as an Affiliate any business entity which is not under such "common control" or a member of such "affiliated service group" but which is otherwise affiliated with the Company, subject to such limitations as the Company may impose.

2.2    Agreement. The Agreement and Release of Claims a Participant must timely execute and not revoke as a condition to receiving Severance Pay. Amongst other things, the Agreement includes a release of all claims against the Company, and a requirement that the Participant timely return Company equipment and property.

2.3    Approved Leave. Time away on a leave of absence approved by the Company's leaves administrator with job reinstatement rights for a specifically defined period of time under state or federal laws or under Wells Fargo's policies, as applicable. Personal Leave, Job Search Leave, unapproved leave, and any involuntary leave based upon one's inability to work in the United States is not Approved Leave for purposes of the Plan. Participants must comply with the Company's requirements to maintain an Approved Leave status.

2.4    Benefits Annual Rate. The Benefits Annual Rate is the Plan's definition of Covered Pay for Participants whose positions have been assigned one of the following pay categories (i.e., Job Class Codes) by Wells Fargo's Total Rewards group as set forth on the Company's Human Capital Management ("HCM") System: (a) Job Class Code 5; or (b) Mortgage Consultant Participant ("MC" - Job Class Code 1). Each quarter, the Benefits Annual Rate is calculated, and earnings are annualized based on base salary, draw, incentives, certain bonuses or commissions paid in the last 12 months divided by the number of months with compensation greater than $0. The Benefits Annual Rate does not include some forms of compensation such as overtime pay, certain bonuses (including but not limited to hiring and retention bonuses), fixed allowances, shift differentials, noncash awards and perquisites such as parking allowance, auto allowance and commute subsidies).

2.5    Benefits Plan Participation. During the Severance Eligibility Period, a Participant may be eligible to continue participation in the Participating Employer's health benefit plans and programs (i.e., medical, dental and vision benefit plans) subject to the provisions of the applicable benefit plan.

2.6    Company. The Company is Wells Fargo & Company, a Delaware corporation and any successor thereof.

2.7    Continuous Service Date. The Participant's Continuous Service Date on the Company's HCM System as of the Participant's Termination Date. For purposes of determining the Participant's completed years of service for the Severance Eligibility Period, the Continuous Service Date is measured as of the last day of the Notice Period. The Continuous Service Date for Participants who become Employees of the Company or an Affiliate in connection with an acquisition may include prior service credit recognized by the predecessor employer provided such service credit is documented in the terms of the purchase agreement governing the Corporate Transaction. If a Participant incurs a break in service that exceeds six months, service incurred prior to the break in service is not counted for purposes of this Plan and, in such circumstances, the Continuous Service Date begins on the rehire date.

2.8    Corporate Transaction. A Corporate Transaction is a business transaction between a Participating Employer and a third party which includes, but is not limited to, a transaction where another company

contractually agrees to acquire all or any portion of the assets, stock, or operations of the Company, Affiliate or Participating Employer, some other business arrangement between the parties as determined by the Plan Administrator, or situations where through or as the result of a Corporate Transaction, the Company or an Affiliate's ownership in an entity drops below 80%.

2.9     Covered Pay. For Participants in positions assigned Job Class Code 2, Covered Pay is Total Base Pay up to an annual maximum of $350,000. For Participants in positions assigned Job Class Codes 1, Covered Pay is the Benefits Annual Rate up to an annual maximum of $265,000. For Participants in Job Class Code 5, Covered Pay is the Benefits Annual Rate up to an annual maximum of $100,000 unless Total Base Pay is greater than $100,000 in which case Covered Pay is Total Base Pay up to an annual maximum of $350,000. For purposes of determining the amount of Severance Pay during the Severance Eligibility Period or a Lump Sum Severance Payment, Covered Pay will be measured as of the last day of the Notice Period.

2.10    Eligible Leave Period. For purposes of eligibility for Severance Pay under the Plan, the Eligible Leave Period is up to 26 weeks of Approved Leave, as measured from the first day of the Approved Leave.

2.11    Employee. An Employee of the Company who a Participating Employer classifies as a common law employee of the Participating Employer. For the avoidance of doubt, individuals who a Participating Employer classifies as an independent contractor or any other status in which the person is not treated as an Employee for purposes of withholding of taxes, regardless of the actual status of the individual, shall not be eligible to participate in this Plan.

2.12    Employment Classifications. The Company has three Employment Classifications within the Company's HCM System:

(a) Regular Employees. Employees of a Participating Employer (excluding Employees classified by the Participating Employer as Fixed-Term, Flexible, or Intern). Regular Employees include full time, part time and time-based assignments. Regular Employees are eligible to participate in the Plan.

(b) Fixed-Term Employees. Employees of a Participating Employer on a temporary contract or temporary assignment with a defined term of employment. Fixed-Term Employees are eligible to participate in the Plan.

(c) Flexible Employees. Employees of a Participating Employer who:

- are assigned a regular schedule with Standard Hours of less than 17.5 hours per week regardless of the actual hours worked;

- work occasional, irregular hours to fill short-term staffing needs such as PTO,

- short-term leaves, or periodic work volume increases;
- work only certain times of the month or year; or
- work any number of hours on specific, short-term projects or assignments with a defined end date.

Flexible Employees are not eligible to participate in the Plan.

(d)    Interns. Employees of a Participating Employer who participate in a formal internship program sponsored by a Participating Employer. Interns are not eligible to participate in the Plan.

2.13    Expatriate/Rotational Assignment Displacement. A Qualifying Event impacting an Employee following repatriation from a Wells Fargo-sponsored international assignment or completion of a Wells Fargo-sponsored rotational, if Wells Fargo management (i) does not place the Participant in a new position or (ii) identifies a new position for the Participant that qualifies as a Substantial Position Change.

2.14    Ineligible Changes. Certain position changes that are not Qualifying Events, including but not limited to:

- An increase in the number of hours the Employee works;
- A decrease in the number of hours the Employee works unless the decrease results in a Substantial Position Change;
- A change in the days the Employee works each week;
- A change in the time the Employee starts or stops his/her job;
- A change in the Employee's shift or shift differential;
- A change in the Employee's job responsibilities, job profile title and/or the Employee's reporting structure;
- A management-directed position demotion or position change (which may include a Total Base Pay reduction or work location move) that results from declining performance or some other corrective action;
- A management-directed position transfer (even if temporary) or lateral move that is not a Substantial Position Change;
- A change in the Employee's annual draw or fixed allowance, if applicable;
- A change in the terms of the Employee's bonus or incentive compensation plan;

- A change in the Employee's Covered Pay due to conditions and restrictions imposed on Wells Fargo under applicable laws, rules and regulations as determined by the Plan Administrator;

- The termination of an alternative working schedule or arrangement, including a telecommuting arrangement or discontinuance of remote work unless the change is a Qualifying Event.

- Prior to or during the Employee's Notice Period, an offer of a position in the Employee's previous business unit from which the Employee received written notice of displacement is made and the Employee declines the offer; or

- The Employee receives a Qualifying Employment Offer in connection with a Corporate Transaction and declines the offer.

2.15    Job Class Code. A Job Class Code is assigned by the Total Rewards group to every Wells Fargo job profile and not to an individual and is used to determine benefits-eligibility and Covered Pay. There are three Job Class Codes with Job Class Codes 1 and 5 being considered "special pay categories" since very few job profiles are assigned these Job Class Codes. (See Covered Pay.) Job Class Code 2 is assigned to job profiles.

2.16    Lump Sum Severance Payment. A one-time payout of remaining Severance Pay for Participants who (i) are on employer sponsorship or certain student visas (as determined by the Plan Administrator) at the time of a Qualifying Event and whose work authorization expires after the Notice Period; (ii) submit a request to the Company in writing during the Severance Eligibility Period; or (iii) are required to take a Lump Sum Severance Payment as determined by the Plan Administrator or its delegate. In no event will a Lump Sum Severance Payment be paid to a Participant who has breached any term or condition of the Agreement. Further, a Lump Sum Severance Payment will not be paid if the Participant is the subject of an active investigation either during the Notice Period or after the Participant's Termination of Employment but prior to the completion of the Severance Eligibility Period. A determination of continued eligibility for Severance Pay will be dependent upon the outcomes of the investigation.

2.17    Mortgage Consultant (MC) Employee. A Mortgage Consultant (MC) Employee holds a job profile title of Mortgage Retail Sales Associate (SAFE), Mortgage Retail Sales Consultant (SAFE), Mortgage Retail Sales Associate Manager (SAFE), Private Mortgage Banking Associate (SAFE), Private Mortgage Banker (SAFE), Private Mortgage Associate Manager (SAFE) or an equivalent job profile title and receive the majority of their pay in the form of sales incentive. MC Employees are assigned Job Class Code 1 by Total Rewards. This designation is assigned to the job profile not to an individual.

2.18    Notice Period. This is the period of time designated by the Company and communicated to the Participant by written notice of a Qualifying Event. The Notice Period begins on the day identified in

the written notice of a Qualifying Event, and may be all working, all non-working, or divided between working and non-working, at the sole discretion of the Company. The Plan Administrator or its delegate, at its discretion, can approve a longer Notice Period than the period identified in the written notice of a Qualifying Event.

2.19    Participant. For purposes of this Plan, a Participant is an Employee of a Participating Employer who is classified in the Company's HCM System as a Regular or Fixed Term Employee. A participant qualifies for Severance Pay only if they satisfy the eligibility provisions and other terms of this Plan.

2.20    Participating Employer. Wells Fargo & Company and any Affiliate of the Company shall become a Participating Employer in the Plan upon being designated by written action by an authorized representative of the Company. Those employers who were Participating Employers in The Wells Fargo & Company Severance Plan immediately prior to the Effective Date of this Plan shall continue to be Participating Employers in this Plan, unless identified as no longer being a Participating Employer. Any Affiliate that is not designated by an authorized representative of the Company as a Participating Employer shall not be a Participating Employer in this Plan.

2.21    Plan Administrator. The Head of Human Resources, or their designee, shall be the Plan Administrator pursuant to Section 5.1.

2.22    Plan Year. The calendar year.

2.23    Position Elimination. Elimination of the Participant's position or any other form of reduction in force initiated by a Participating Employer affecting a Participant's position. The completion of a project or position established for a specific length of time shall not be considered a Position Elimination under this Plan unless the terms of the project or assignment are documented in a writing by an authorized representative of the Participating Employer (i) identifying the project or assignment's termination and (ii) attesting that the criteria for Position Elimination has been met in a manner consistent with Company policy.

2.24    Qualifying Employment Offer. A Qualifying Employment Offer must include the following employment terms for an Employee whose employment with a Participating Employer is affected by a Corporate Transaction:

- Prior service credit that would be used to determine Continuous Service Date;
- Total Base Pay at least equal to the affected Employee's Total Base Pay prior to the transfer for a minimum of 12 months;
- A benefits package that is similar to the benefits package offered by Wells Fargo prior to the

transfer. A "similar" benefits package is defined as one containing all three of the following elements: health insurance (medical, dental and vision), a retirement savings or capital accumulation plan providing the affected Employee with the opportunity to save or accrue for retirement, and time off with pay for personal reasons and for health-related reasons; and

- A work location that is not beyond a Reasonable Commute Distance.

For the avoidance of doubt, a Qualifying Employment Offer is the actual offer of employment for, or the employment terms afforded to, Participants affected by a Corporate Transaction that results in the Employee no longer working for a Participating Employer or an Affiliate, whether or not the Participant actually experiences a termination of employment.

2.25  Qualifying Event. A Position Elimination, a Substantial Position Change, a USERRA-Related Displacement, an Expatriate/Rotational Assignment Displacement, or a Qualified Medical Leave Displacement. Ineligible Changes to a position are not a Qualifying Event.

2.26  Qualified Medical Leave. A medical leave certified by Wells Fargo or its authorized leave administrator that (1) has no job reinstatement rights, under federal, state, local or under Wells Fargo's policies, as applicable; or (2) continues beyond 26 weeks and does not exceed 24 months.

2.27  Qualified Medical Leave Displacement. A Qualifying Event that occurs when an eligible Employee on a Qualified Medical Leave: (1) is released to return to work by their treating physician; (2) their prior position has been eliminated, replaced, or is no longer available; (3) the Employee actively engaged in good faith with the Company's job reassignment process; and (4) is not offered a position with the Company, a Participating Employer, or an Affiliate or is offered and does not accept a position with the Company, a Participating Employer, or an Affiliate that constitutes a Substantial Position Change.

2.28  Reasonable Commute Distance. In the case of a work location change, it is a Reasonable Commute Distance unless all of the following occur:

- The distance between the Employee's previous work site and the new work site exceeds 20 miles one way; and

- The resultant commute measured in miles) from home to the new work site exceeds the Participant's commute (measured in miles) to the previous work site (one way); and

- The resultant commute from home to the new work site exceeds 40 miles one way, using a mapping resource for this information, as determined by the Participating Employer.

Note: Full-time telecommuting agreements that are terminated by management may qualify as a Substantial Position Change if the resultant commute from the Participant's home to the new work location exceeds 40 miles (one way). However, a change in location from remote work (e.g., from home or an alternative remote location) that is subject to a telecommuting agreement is not

considered a Substantial Position Change.

2.29    Schedule. The Severance Eligibility Period is based on the Schedule that is attached and incorporated into this Plan document as Appendix A.

2.30    Severance Eligibility Period. The Severance Eligibility Period is the period of time commencing on the day immediately following the Participant's Termination Date and generally continues for the period of time described in the Schedule as it applies to the Participant, unless it ends sooner in accordance with the Plan. During the Severance Eligibility Period, a Participant may receive Severance Pay pursuant to Article IV of this Plan.

2.31    Severance Pay. Severance Pay is the provision of Covered Pay for the Severance Eligibility Period or in the form of a Lump Sum Severance Payment. Severance Pay is paid through post-termination installment payments on the Company's regularly scheduled days to a Participant for the duration of the Severance Eligibility Period pursuant to Article IV Section 4 of this Plan. For Participants who began their Severance Eligibility Period prior to the Effective Date of this Amended and Restated Plan, remaining Severance Pay will be paid in the form of post-termination installment payments for the remainder of the Severance Eligibility Period, unless it is paid in the form of a Lump Sum Severance Payment.

2.32    Standard Hours. Standard Hours are the number of hours an Employee is expected to work each week as reflected in the Company's HCM System. Standard Hours are not the same as scheduled hours. For example, a Regular full-time Employee may have Standard Hours of 35 hours per week, but some weeks may only work 29 hours and other weeks may work 40 hours.

2.33    Substantial Position Change. A Substantial Position Change occurs when management initiates a change to an Employee's current position, or offers an Employee who has experienced a Position Elimination, a new position that results in one of the following changes:

- A change in work location beyond a Reasonable Commute Distance;

- A reduction of more than 15% in the Employee's Covered Pay as indicated on the Company's HCM System for Employees in positions assigned Job Class Code 2; or

- If (1) an Employee's pay category changes from a position assigned Job Class Code 2 to a position assigned Job Class Code 1 or 5, or vice versa, or (2) the Employee's position is assigned Job Class Code 5 and management reduces the Employee's Total Base Pay by more than 15%, and the Employee's pre-change Covered Pay is not maintained at the pre-change level for a six-month transition period following notice of the intended change.

An Employee who is affected by a Substantial Position Change must provide written notice to the Plan Administrator of the Employee's desire to receive Severance Pay within 30 days of notice of the Substantial Position Change and must permit the Participating Employer 30 days following notice to the Plan Administrator to cure the change prior to the action becoming a Qualifying Event. For avoidance of doubt, an Employee who (1) does not provide written notice to the Plan Administrator of the Employee's desire to receive Severance Pay within 30 days of notice of the Substantial Position Change or (2) does not permit the Participating Employer 30 days following the Employee's notice to cure the change, does not satisfy the eligibility criteria and is not eligible for Severance Pay under the Plan regardless of whether the Employee continues or separates from employment with a Participating Employer.

2.34    Termination Date. The last day of employment as reflected on the Company's HCM System. For purposes of this Plan, the Termination Date is typically the last day of the Participant's Notice Period, unless the Participant's employment ends on a different date due to the Participant's resignation or at the sole discretion of the Company.

2.35    Total Base Pay. Total Base Pay is: (1) the Participant's hourly rate of pay multiplied by the Participant's number of Standard Hours as set forth on the Company's HCM System as of the last day of the Notice Period and takes in to account the number of working days each calendar year; multiplied by (2) the number of weeks in a calendar year. Total Base Pay includes amounts designated as pre-tax contributions to the Company's employee benefit plans but does not include some forms of compensation such as draw, incentives, bonuses (including but not limited to hiring, incentive and retention bonuses), fixed allowances, commissions, overtime pay, shift differential, noncash awards and perquisites such as parking allowance, auto allowance and commute subsidies. For purposes of this Plan, the Total Base Pay is converted into a weekly salary amount.

2.36    USERRA. USERRA is the Uniformed Services Employment and Reemployment Rights Act

2.37    USERRA-Related Displacement. A Qualifying Event that occurs if an Employee returning from approved Military Leave does not have a position due to a prior Position Elimination, the Company or Participating Employer is not required by USERRA to reinstate the Employee, and management (i) does not reassign the Participant to another position because a similar position for which the Employee is qualified is not available or (ii) reassigns the Participant to another position that is a Substantial Position Change (in which case the Qualifying Event becomes the Substantial Position Change).

2.38    Workforce Share Program. A Company program under which Employees are reassigned to other positions identified by the Company on temporary basis to meet business needs.

## ARTICLE III
## ELIGIBILITY FOR BENEFITS

3.1    General Eligibility. Each Employee of a Participating Employer who is classified in the Company's HCM System as a Regular or Fixed-Term Employee on the first day of the Notice Period of a Qualifying Event shall be eligible for Severance Pay, provided they satisfy the terms and conditions of the Plan and have not experienced any Disqualifying Events.

Individuals who a Participating Employer classifies as an independent contractor or any other status in which the person is not treated as an Employee for purposes of withholding of taxes, regardless of the actual status of the individual, shall not be eligible to participate in this Plan. (The previous sentence applies to all periods of such service of an individual who is subsequently reclassified an Employee, whether the reclassification is retroactive or prospective.)

3.2    Disqualifying Events. A Participant becomes immediately ineligible for Severance Pay or a Lump Sum Severance Payment under the Plan if any of the following events or circumstances occur:

(a)    The Participant (1) is party to a written employment agreement or other separation agreement with a Participating Employer or an Affiliate (or a predecessor of a Participating Employer or an Affiliate), (2) is eligible for a different severance or pay arrangement as set forth in a contractual agreement between the Participant and a representative of a Participating Employer (or a predecessor of a Participating Employer) or an Affiliate, or (3) is a participant in another plan or program sponsored by the Company or an Affiliate (or a predecessor of the Company or an Affiliate) that provides for severance, change in control or other forms of severance pay, and the severance/separation pay under such agreement or arrangement is greater than the lump sum value of the Severance Pay that would be due under this Plan as determined by the Plan Administrator;

(b)    The Participant is party to an agreement or other arrangement that provides severance/separation pay less than the Severance Pay that would be due under the Plan and the does not timely waive such benefits in a manner prescribed by the Plan Administrator;

(c)    The Participant either continues or commences employment with the Company, a Participating Employer or an Affiliate because the Participant has accepted a new position through the job posting process, the Participant has accepted a position with an Affiliate, the Participant has become registered with an Affiliate that is a broker-dealer or performs services for an individual who is registered with an Affiliate that is a broker-dealer, or the Participant continues or commences a contingent resource assignment aligned to Wells Fargo during their Severance

Eligibility Period;

(d) The Participant fails to cooperate with a Participating Employer's efforts to retain the Participant by declining a reassignment to a new job or job title; or an offer of a position with a Participating Employer or an Affiliate that does not qualify as a Substantial Position Change, after the Participant has been advised either verbally or in writing that the Participant's position will be eliminated, but before the Participant begins the Severance Eligibility Period;

(e) The Company or one of its Affiliates enters into a Corporate Transaction, and pursuant to the terms of the Corporate Transaction, the Participant is presented a Qualifying Employment Offer, whether or not the Participant accepts or declines the Qualifying Employment Offer or continues employment[1];

(f) The Participant's employment with a Participating Employer is terminated prior to completion of the Notice Period (for any reason except due to the Participant's death);

(g) The Participant's employment is terminated for any reason other than a Qualifying Event (including, but not limited to, poor performance, violation of the Company's Code of Conduct or the Participating Employer's employment policies (e.g., engaging in other employment that constitutes a conflict of interest or removing downloading, or sending information externally in violation of the Information Security Policy or Code of Conduct), whether or not the Participant had already received notice of a Qualifying Event, or any other circumstance where the Company determines it is no longer in the best interest of the Company to pay the Severance Pay or make any further payments under the Plan;

(h) If on the date the Employee would otherwise be eligible to receive written notice of a Qualifying Event related to Position Elimination or eligible for a Qualifying Employment Offer in connection with a Corporate Transaction, the Employee is on a leave of absence and meets -any of the following conditions: (i) the Employee is on leave that is not Approved Leave, (ii) the Employee on leave has no statutory job reinstatement rights under state or federal laws, (iii) the Employee's leave has no job reinstatement rights for a specifically defined period of time under any of the Company's leave policies; (iv) the Employee has exhausted the specifically defined statutory period of time for job reinstatement under state or federal laws applicable to the Employee's leave and has no reinstatement rights under state or federal law or Company leave policy; or (v) the Employee is on an Approved Leave that exceeds the Eligible Leave Period.

---

[1] For the avoidance of doubt, if an Employee receives a Qualifying Employment Offer from a third party in connection with a Corporate Transaction and the Employee declines the offer, the Employee will be deemed to voluntarily terminate their employment with the Participating Employer on the effective date of the transaction unless the Employee obtains another position within the Company prior to the effective date.

(i)   The Participant voluntarily requests or accepts a change in the Participant's position (including a schedule reduction or the acceptance of an offer to relocate that the Participant does not timely complete) that would otherwise be a Substantial Position Change; Accepting an offer for a Substantial Position Change that includes relocation makes an Employee ineligible for severance under this Plan.

(j)   The Participant experiences a Qualifying Event but refuses to sign, revokes or fails to abide by the terms of the Agreement;

(k)   The Participant is (i) not on an Approved Leave or (ii) on an Approved Leave beyond 26 weeks; or

(l)   Prior to the date the Participant received notice of a Qualifying Event, the Participant notified the Company or Participating Employer of the Participant's intent to separate from employment for any reason (e.g., resignation, retirement) prior to the end of the Notice Period.

The Disqualifying Events described in this Section affect a Participant's eligibility for Severance Pay under this Plan, but such a Participant remains a Participant in the Plan.

ARTICLE IV
SEVERANCE

4.1   <u>Qualification for Severance Pay</u>. A Participant shall qualify for Severance Pay if the Participant (1) experiences a Qualifying Event, (2) timely executes and does not revoke the Agreement provided pursuant to Section 4.3 of this Plan, (3) is not disqualified under Section 3.2; and (4) abides by the terms of the Agreement. The following sections of Article IV assume a Participant has satisfied the qualification requirements of this Section 4.1.

4.2   <u>The Schedule</u>. The amount of a Participant's Severance Pay shall be determined in accordance with the Schedule described in Appendix A, based on the Participant's (i) Continuous Service Date as of the last day of the Notice Period and (ii) the Participant's Covered Pay as of the last day of the Notice Period.

4.3   <u>The Notice Period and Agreement</u>.

The Agreement shall be in such form as determined by the Plan Administrator. Each Participant eligible for Severance Pay has forty-five (45) days beginning on the first day of the Participant's Notice Period to consider the terms of the Agreement, unless the Qualifying Event occurs during an Approved Leave or stems from a Qualified Medical Leave or USERRA-Related Displacement, as described below.

(a) Approved Leave. If a Participant receives written notice of a Qualifying Event while on an Approved Leave, their Notice Period will continue until the later of (i) the date identified in the Participant's written notice of a Qualifying Event as the end of the Notice Period or (ii) the date the Participant is released to return to work during the Eligible Leave Period. Upon release to return to work, the Participant will be provided an Agreement and placed on an unpaid leave for up to 45 days to consider the terms of the Agreement.

(b) Qualified Medical Leave Displacement. If an Employee meets the conditions of a Qualified Medical Leave Displacement, the Employee will be provided written notice of this Qualifying Event, an Agreement, and will be placed on an unpaid leave for up to 21 days to consider the terms of the Agreement.

(c) USERRA-Related Displacement. If an Employee meets the conditions of a USERRA-Related Displacement on the Notice Date, the Employee will be provided written notice of this Qualifying Event. Upon receipt of an honorable discharge written release as defined by USERRA and Company's policies, the Employee will be provided with a copy of an Agreement and will be placed on an unpaid leave for up to 21 days to consider the terms of the Agreement.

If a Participant is provided written notice of a Qualifying Event during an Approved Military Leave or placed on a Company-approved Military Leave during the Notice Period, the remaining Notice Period will be suspended and resume when the Participant timely reapplies for reemployment in accordance with USERRA's reemployment rights.

In all cases, upon the execution of the Agreement, the Participant has seven (7) days (15 days in Minnesota) in which to revoke such Agreement (the "Revocation Period") in writing to the Plan Administrator. If a Participant revokes the Agreement during the Revocation Period, he/she will be ineligible for Severance Pay. In no event shall Severance Pay begin prior to the Participant's timely execution of the Agreement, the expiration of the Revocation Period, and the Participant's Termination Date following completion of the Notice Period or in the case of an Approved Leave or Qualifying Medical Leave Displacement, completion of the unpaid consideration period.

4.4    Time and Form of Severance Pay.

(a) The Severance Eligibility Period. The Severance Eligibility Period shall commence on the day immediately following the end of the Notice Period, provided the Participant has timely executed and not revoked the Agreement. Once the Severance Eligibility Period begins, it shall continue until all Severance Pay has been paid in accordance with the Schedule, or if earlier, pursuant to Section 4.4(b), where a Disqualifying Event occurs pursuant to Section 3.2, or as required by Section 8.3. The Severance Eligibility Period may be suspended if a Participant is under an active investigation either before or after the Participant's Termination of Employment.

(b) <u>Early Termination of Severance Pay.</u> Severance Pay and the Severance Eligibility Period may end sooner than described in the Schedule if the Participant:

- Fails to abide by the terms and condition of the Agreement. In this case, the Participant's Severance Pay and Severance Eligibility Period will end and the Participant will not be eligible to receive a Lump Sum Severance Payment for any remaining portion of the Severance Pay.

- Is rehired because the Participant accepts a new position with a Participating Employer, the Participant becomes registered with an Affiliate that is a broker-dealer or performs services for an individual who is registered with an Affiliate that is a broker-dealer, or the Participant accepts a position with a Wells Fargo vendor as a contingent resource. In any of these cases, the Participant's Severance Pay and Severance Eligibility Period will end and the Participant will not be eligible to receive a Lump Sum Severance Payment for any remaining portion of the Severance Pay.

- Submits a request for a Lump Sum Severance Payment. In this case, if the Plan Administrator or its delegate deems the Participant is eligible for the lump sum, the Participant's Severance Eligibility Period will end and the Participant will receive a Lump Sum Severance Payment for any remaining Severance Pay. If a Participant who received a Lump Sum Severance Payment is offered a position by a Participating Employer following the Participant's Termination Date but prior to the date that would have been the last day of the Participant's Severance Eligibility Period, the Participant shall repay to the Company the portion of the Lump Sum Severance Payment for the period between the rehire date through the end date of the Severance Eligibility Period, prior to starting the new position.

- Engages in conduct that violates either the Company's or the Participating Employer's written policies or otherwise prohibits the Participant from being employed by a Participating Employer or an Affiliate, including but not limited to violations of the Company's Code of Conduct, or conduct that would have resulted in a violation of a policy whether or not such conduct was discovered while the Participant was actively working for the Participating Employer or after the Participant's Termination Date. In such circumstances, the Participant's opportunity for Severance Pay and the Severance Eligibility Period will end on the date the Company determines there has been a violation, and the Participant will not be eligible to receive a Lump Sum Severance Payment for all or any remaining portion of the Severance Pay.

(c) <u>Death.</u> In the event of a Participant's death during the Notice Period or during the Severance Eligibility Period following the Participant's Termination Date, a Lump Sum Severance Payment representing any remaining Notice Period pay (if applicable) and remaining Severance Pay due to the Participant shall be paid as soon as administratively practicable and in accordance with applicable state law following the Plan Administrator's notification of the Participant's death.

(d) <u>Military Leave.</u> If a Participant is provided written notice of a Qualifying Event during an Approved Military Leave or placed on a Company- approved Military Leave during the Notice Period, the

remaining Notice Period will be suspended until the Participant is released to return to work in accordance with USERRA's reemployment rights following completion of the Military Leave, provided the Participant executes the Agreement.

4.5    Eligibility. If a Participant experiences an Early Termination of Severance Pay as set forth in Article 4.4(b) above, the Participant's eligibility for Benefits Plan Participation will end on the date the Severance Pay and Severance Eligibility Period ends.

4.6    Right to Offset. The benefits to be paid or provided under the Plan are not intended to be in addition to pay-in-lieu-of-notice, severance pay, or similar benefits under other severance programs, written employment agreements, or other applicable laws, such as the WARN Act or comparable state or local laws or regulation. The Company may integrate Severance Pay with any post-termination (i) state-mandated disability benefits and (ii) Workers' Compensation benefits. Should such other benefits be payable, benefits under this Plan will be reduced accordingly, or alternatively, benefits previously paid under this Plan will be treated as having been paid to satisfy such other benefit obligations. In either case, the Plan Administrator will determine how to apply this provision and may override other provisions of the Plan in doing so.

4.7    Withholding. Severance Pay is considered taxable income. A Participating Employer shall withhold all applicable taxes and deductions required by federal, state, and local laws, or other laws or regulation.

ARTICLE V
PLAN ADMINISTRATION

5.1    The Plan Administrator. The Company's Head of Human Resources or designee shall be the Plan Administrator. The Plan Administrator has the full, exclusive and discretionary authority to prescribe such forms, make such rules, regulations, interpretations, computations, and construction of the terms of the Plan, determine all issues relating to eligibility for benefits under the Plan, correct any defect, supply any omission, reconcile any inconsistency, interpret the terms of the Plan, and take such other action to administer the Plan as the Plan Administrator in its discretion may deem appropriate. The validity of any such rules, regulations, interpretations, computations, and construction of the terms of the Plan and determination of Plan issues shall be given deferential review if challenged in court, by arbitration, or in any other forum, and shall be upheld unless clearly arbitrary or capricious.

5.2    Delegation of Administrative Duties. The Plan Administrator may, at any time, delegate to personnel of the Participating Employers such discretionary authority and such duties and responsibilities, as he

or she deems appropriate to facilitate the day-to-day administration of the Plan. Any rules, computations, interpretations, and actions by the Plan Administrator or his or her delegate (subject to the Plan's claims procedures) shall be final and binding upon all persons. Such delegation shall be memorialized in writing signed by the Plan Administrator.

5.3     Indemnification. Except as prohibited by applicable law, the Company shall indemnify and hold harmless, to the full extent permitted by law, the Plan Administrator and any other persons to whom any duty with respect to the Plan is delegated from and against any and all liabilities, claims, demands, costs and expenses, including attorneys' fees, arising out of an alleged breach in the performance of their duties under the Plan, other than those liabilities, claims, demands, costs and expenses that result from gross negligence or willful misconduct. The Company shall have the right, but not the obligation, to conduct the defense of such persons in any proceeding to which this provision applies. The Company may satisfy its indemnification obligations in whole or in part through the purchase of insurance providing equivalent protection.

No person shall look to, or have any claim against any officer, director, Employee, or agent of the Company or a Participating Employer, in his or her individual capacity, for the payment of Severance Pay under this Plan. It is intended that this Plan is a welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended from time to time.

5.4     Correction of Errors. It is recognized that in the operation and administration of the Plan (including the Notice Period), mathematical, accounting or other administrative errors may be made or mistakes may arise by reason of factual errors in information supplied to, or by, the Company. The Plan Administrator or its delegate shall have power to correct such errors, as the Plan Administrator in its discretion considers appropriate. Such adjustments shall be final and binding on all parties.

5.5     Agent for Legal Process. Wells Fargo & Company's Corporate Secretary, at the address below, is the designated agent for service of legal process for the Plan. Legal process may also be served on the Plan Administrator at the address listed in Section 6.1 below.

Corporate Secretary
Wells Fargo & Company
MAC: 10193-610
30 Hudson Yards, Floor 61
New York, NY 10001-21702170

5.6     Incompetent Payee. If, in the opinion of the Plan Administrator or its delegate, a Participant who is

entitled to Severance Pay under this Plan is disabled from caring for his or her affairs because of a mental condition, physical condition, or age, payment due such person may be made to a representative upon furnishing the Plan Administrator with satisfactory evidence of such status that comports with state law, including all necessary authorizations and legal documentation (e.g., power of attorney). The Plan Administrator shall have no duty to make inquiry as to the competency of any person entitled to receive payments hereunder.

ARTICLE VI
PARTICIPANT CLAIMS AND APPEALS[2]

6.1   Claims Procedures.  Any Participant who believes they are entitled to a Plan benefit or a greater Plan benefit may submit a claim for benefits to the Plan Administrator.

(a)   Any claim for benefits under the Plan must be filed within ninety (90) days of (i) the first date the Participant learns the amount of Plan benefits available to the Participant under the Plan or (ii) the first date the Participant learns there will be no Plan benefit available to the Participant under the Plan.

(b)   Claims must be in writing and must set forth the basis for the claim (including any documentation in support of Participant's claim). Claims should be delivered to the Plan Administrator at the following address:

> Wells Fargo & Company Severance Plan
> Attention: Severance Plan Administrator
> MAC F2301-03A
> 1 Home Campus
> 3rd Floor
> Des Moines, IA 50328-0001
> Email: SCPPlan.Admin@wellsfargo.com

Claims must be in writing, signed by the Participant or their authorized representative and submitted to the Plan Administrator or its delegate in care of Severance Plan Administrator at the address referenced above.

---

[2] The procedures (or a portion thereof including the filing deadlines) described in this Article VI are subject to modification by rules issued by the Department of Labor from time to time. If and when such rules are in effect, Participants will be notified accordingly. The Plan Administrator will comply with applicable law and notify Participants in due course.

Following the Severance Plan Administrations group's receipt of the Participant's claim, the Participant will receive an acknowledgement indicating who will be reviewing the claim (the "Claim Reviewer"). The Claim Reviewer shall notify the Participant claimant in writing of approval or denial of the claim in accordance with the timeframes described below. The time period for making an initial decision on a benefit claim begins to run when the claim is filed, regardless of whether the Plan has all of the information necessary to decide the claim at the time of filing. (A Participant may voluntarily agree to provide the Plan additional time within which to make a decision on a claim but the Plan is not required to take the extension of time or request additional information from the Participant.) In determining whether to approve or deny any claim, the Claim Reviewer shall exercise his/her discretionary authority, as delegated by the Plan Administrator, to reasonably apply the provisions of the Plan to the facts presented with respect to the claim. Any approval or denial shall be final and conclusive upon all persons unless the claimant files a timely written appeal for review of a denial pursuant to Section 6.2.

(c) Timing of the Notice of the Benefit Decision. If any request for benefits is denied, in whole or in part, the Claim Reviewer will notify the Participant of the adverse decision within a reasonable period of time, but no later than 90 days after the Plan's receipt of the claim. If the Claim Reviewer determines that an extension of time for processing the claim is needed, the Claim Reviewer will notify the Participant of the reasons for the extension and the extended due date before the end of the 90-day period after the filing of the claim. The extended period may not exceed 180 days after the date of the filing of the claim. If an extension is needed because the Participant did not provide sufficient information or filed an incomplete claim, then the time from the date of the Claim Reviewer's notice requesting further information until the Claim Reviewer receives the requested information does not count toward the number of days that the Claim Reviewer has to notify the Participant of the claim determination. If a timely notification for approval or denial is not received by a claimant, they may deem the claim denied and may appeal the denial pursuant to Section 6.2.

(d) Content of the Notice. The notice of an adverse benefit decision may be provided in written or electronic form. The notice must provide the following information:

- the specific reason(s) for the denial,
- specific references to pertinent Plan provisions,
- if the denial is based on insufficient information, a description of any additional material or information needed and why such information is needed, and
- an explanation of the Plan's appeal review procedure, the time limits, and a statement regarding the Participant's right to bring a civil action under ERISA section 502(a) following an adverse benefit determination on appeal.

The Participant must be provided, upon request and free of charge, access to and copies of all documents, records or other information relevant to the benefit claim (but not confidential information relating to other employees). (A document is considered "relevant" to the benefit claim if it (i) is not legally privileged, (ii) was relied upon in making the benefit determination; (iii) was submitted, considered or generated in the course of making the benefit determination, or (iv) demonstrates compliance in making the benefit decision with the requirement that the benefit determinations must follow the terms of the Plan and be consistent when applied to similarly situated Participants.)

6.2    Appeals. The Plan Administrator has delegated the responsibility to review appeals to the Severance Plan Appeals Committee (the "Appeals Committee"). Any Participant or the duly authorized representative of any Participant, whose claim for benefits is denied in whole or in part, may file a written appeal of the denial with the Plan Administrator in care of the Appeals Committee. Appeals should be delivered to the Appeals Committee at the following address:

> Wells Fargo & Company Severance Plan
> Attention: Severance Plan Administrator
> MAC F2301-03A
> 1 Home Campus
> 3rd Floor
> Des Moines, IA 50328-0001
> Email: SCPPlan.Admin@wellsfargo.com

An appeal must be filed within sixty (60) days after receipt of written notice of denial and must set forth (i) all of the grounds upon which the request for review is based and (ii) any facts, written comments, documents, records and other information supporting the request. The Participant must be provided, upon request and free of charge, access to and copies of all documents, records or other information relevant to the benefit appeal (but not confidential information relating to other employees). (A document is considered "relevant" to the benefit claim if it (i) is not legally privileged, (ii) was relied upon in making the benefit determination; (iii) was submitted, considered or generated in the course of making the benefit determination, or (iv) demonstrates compliance in making the benefit decision with the requirement that the benefit determinations must follow the terms of the Plan and be consistent when applied to similarly situated Participants.) The time period for making an initial decision on a benefit appeal begins to run when the appeal is filed, regardless of whether the Plan has all of the information necessary to decide the claim at the time of filing. A Participant may voluntarily agree to provide the Appeals Committee additional time within which to make a decision on an appeal but the Plan is not required to take the extension of time or request additional information from the Participant.

The Appeals Committee shall make a full and fair review of each request and any relevant materials submitted by the Participant or the Participant's authorized representative and may require the submission of additional facts, documents, or other evidence. The review on appeal must consider all comments, documents, records or other information submitted by the Participant, without regard to whether such information was submitted or considered in the initial benefit determination. On the basis of the independent review including consideration of the facts presented with respect to the request for review, the Appeals Committee shall make an independent determination of the Participant's eligibility for benefits. The Appeals Committee's determination of the appeal shall be final and conclusive upon all persons.

(a) Timing of the Notice of Appeals Decision. The Appeals Committee shall act upon each appeal within a reasonable period of time, but no later than sixty (60) days, after the Plan's receipt of the appeal. If the Appeals Committee determines that an extension of the time for processing the appeal is needed because of special circumstances, the Appeals Committee will notify the Participant of the reason for the extension and the extended due date before the end of the initial sixty (60) day period. The extended period may not exceed 120 days after the date of the filing of the appeal. If a Participant does not receive a timely notification for approval or denial, he or she may deem the appeal denied.

(b) Content of the Notice. A notice of an appeal determination will be provided in written or electronic form. If the Appeals Committee denies an appeal in whole or in part, the Appeals Committee's notice of its decision will provide the following information:

- The specific reasons for the denial,

- The specific references to the pertinent provisions of the Plan on which the determination is based,

- A statement that the Participant is entitled to receive, upon request and free of charge, access to and copies of all documents, records and other information relevant (as defined above) to the benefit claim, and

- A statement regarding the Participant's right to bring civil action under ERISA section 502(a).

ARTICLE VII
AMENDMENT AND TERMINATION

7.1 Right to Amend and Terminate. The Company reserves the right to terminate or amend this Plan (or the participation of a Participating Employer in the Plan) at any time and in any manner by written action of the Human Resources Committee of the Board of Directors of the Company, or by action of a person so authorized by resolution of the Board of Directors or the Human Resources Committee,

or by written action of the Company's:

- Board Chair,
- Chief Executive Officer and President,
- Head of Human Resources, or
- Head of Total Rewards.

Any termination or amendment of the Plan shall be effective as of the "effective date" of such termination or amendment with respect to any Severance Pay not yet paid, other than Severance Pay in pay status, whether or not prior notice of such amendment or termination has been given to affected Participants.

ARTICLE VIII

MISCELLANEOUS

8.1 <u>Employment.</u> This Plan does not constitute a contract of employment or impose on the Participating Employers any obligation to retain any Participant as an employee, to continue any Participant's current employment status and does not change any employment policies of the Participating Employers.

8.2 <u>Specified Employees and IRC Section 409A.</u> This Plan shall be interpreted and administered in such a manner such that all payments are either exempt from the application of, or comply with, the requirements of Section 409A of the Internal Revenue Code of 1986, as amended (the "Code"). To the extent any Severance Pay is considered "deferred compensation" under Code section 409A, each installment payment thereof shall be treated as part of a series of separate payments under Treasury Regulation Section 1.409A-2(b)(2)(iii). Notwithstanding any other provision of the Plan to the contrary, if Severance Pay is subject to Code section 409A, and the Participant is a "specified employee" (as defined in Code section 409A, with such classification to be determined in accordance with the methodology established by the Company), then, to the extent required to avoid the imposition of an additional tax under Code section 409A, no distribution or payment of any Severance Pay to such Participant shall be made before the date that is six months following the date of "separation from service" (as defined in Code section 409A) or, if earlier, the date of death (the "Waiting Period"). The Plan Administrator will determine how to administer the Waiting Period. The Company reserves the right to require a Lump Sum Severance Payment within 60 days following a Participant's Termination Date.

8.3 <u>Compliance with Laws and Governance</u>. The determination and payment of benefits under this Plan are subject to the conditions and restrictions imposed under applicable laws, rules, and regulations. A

Participant's right to or receipt of benefits under the Plan may be delayed, limited, modified, cancelled, or recovered to ensure compliance with all such applicable laws, rules, regulations, and any guidance that may be issued thereunder.

8.4    Right to Terminate Employment. The fact that a former Employee has failed to qualify for Severance Pay under this Plan shall not revoke or otherwise affect in any manner whatsoever the Employee's termination of employment from a Participating Employer, and such failure to qualify for Severance Pay shall not establish any right of any kind or description whatsoever:

     (a)    To a continuation or to a reinstatement of employment with the Company or any Participating Employer, or

     (b)    To receive any payment from the Company or any Participating Employer in lieu of such benefit.

8.5    Source of Benefits. Plan benefits shall be paid when due from the general assets of the Participating Employers, the Company or a designated fund or trust of the Company. The Company shall not be required to establish a trust to fund Plan benefits, nor may anything herein be deemed to create a trust relationship or grant to any Employee any right against a Participating Employer, the Company or their assets that are greater than the right of a general creditor.

8.6    No Assignment: Binding Effect. No Participant shall have the right to alienate, assign, commute, or otherwise encumber his/her benefit under this Plan for any purpose whatsoever, and any attempt to do so shall be regarded completely as null and void. The provisions of this Plan shall be binding on each Participant (and on each person who claims a benefit under any such person) and the Company.

8.7    Construction. This Plan shall be construed in accordance with the laws of the state of Minnesota to the extent not preempted by Federal Law. Headings and subheadings have been added only for convenience of reference and shall have no substantive effect whatsoever. All references to Sections shall be to Sections of this Plan.

8.8    Construed as a Whole. The provisions of this Plan shall be construed as a whole in such manner as to carry out the provisions thereof and shall not be construed separately without relation to the context.

8.9    History of the Plan.

| Effective Date | Amendment | Amendment and Restatement |
|---|---|---|
| July 1, 1999 | | X |
| April 1, 2002 | | X |
| January 1, 2009 | | X |
| July 1, 2009 | X | |
| January 1, 2010 | X | |
| June 1, 2010 | X | |
| July 1, 2010 | X | |
| January 1, 2013 | X | |
| August 1, 2016 | | X |
| April 1, 2017 | | X |
| January 1, 2018 | | X |
| June 1, 2019 | | X |
| January 1, 2020 | | X |
| March 19, 2020 | X | |
| April 1, 2020 | X | |
| June 1, 2020 | X | |
| January 1, 2021 | | X |
| January 1, 2022 | | X |
| January 1, 2024 | | X |

Appendix A
The Schedule

| Completed Years of Service | Severance Pay (8 Weeks Minimum) |
|---|---|
| <1, 1 | 8 weeks |
| 2 | 8 weeks |
| 3 | 8 weeks |
| 4 | 8 weeks |
| 5 | 10 weeks |
| 6 | 12 weeks |
| 7 | 14 weeks |
| 8 | 16 weeks |
| 9 | 18 weeks |
| 10 | 20 weeks |
| 11 | 22 weeks |
| 12 | 24 weeks |
| 13 | 26 weeks |
| 14 | 28 weeks |
| 15 | 30 weeks |
| 16 | 32 weeks |
| 17 | 34 weeks |
| 18 | 36 weeks |
| 19 | 38 weeks |
| 20 | 40 weeks |
| 21 | 42 weeks |
| 22 | 44 weeks |
| 23 | 46 weeks |
| 24 | 48 weeks |
| 25 | 50 weeks |
| 26+ | 52 weeks |

This Schedule sets forth the maximum amount of Severance Pay that will be paid to a Participant who qualifies for Severance Pay pursuant to the provisions of Article IV of the Plan. If a Participant is eligible for Severance Pay, the Severance Eligibility Period will be the number of weeks indicated above based on the Participant's Continuous Service Date as of the last day of the Notice Period, subject to the terms and conditions of the Plan.

Participants are required to report immediately to Wells Fargo's Displacement Operations any overpayment paid to them during the Notice Period or the Severance Eligibility Period. Pursuant to Wells Fargo's Code of Conduct, it is the Participant's responsibility to reimburse Wells Fargo for any overpayments. Wells Fargo may notify Participants when Wells Fargo becomes aware of any overpayment.

## The basics

There may be times when displacement or substantial position changes are necessary for business reasons. If this happens, affected participants are given advance written notice whenever possible and are provided assistance in locating other suitable positions; in the case of employees who are returning from Medical Leave with no position and no job reinstatement protection, job reassignment assistance is provided to help find or be placed into a suitable position. The Wells Fargo & Company Severance Plan (the Plan) is designed to provide post termination severance benefits to assist eligible employees in these situations while they are seeking new employment. The Plan complies with the requirements of the Employee Retirement Income Security Act of 1974, as amended (ERISA) and is a "welfare benefit plan" as that term is described under ERISA. The Plan was originally effective July 1, 1999, and it has been amended and restated several times with effective dates of April 1, 2002; January 1, 2009; July 1, 2009; January 1, 2010; June 1, 2010; July 1, 2010; January 1, 2013; August 1, 2016; April 1, 2017; January 1, 2018; June 1, 2019; January 1, 2020; March 19, 2020; April 1, 2020; June 1, 2020; January 1, 2021; January 1, 2022; and January 1, 2024. No person is authorized to make promises regarding benefits under the Plan except as provided in the Plan. Every effort has been made to accurately describe the Plan in this SPD. However, if there should be a discrepancy between the SPD and the Plan, then the Plan document will control.

## Who's eligible

### Eligible employees

You are eligible to participate in the Plan if you were/are:

- Classified as a regular or fixed-term employee on a Wells Fargo U.S.-based payroll system and you receive written notice of a qualifying event.

### Ineligible individuals

You are not eligible to participate in the Plan if you are:

- Classified as an intern. "Interns" are employees who participate in a formal internship program sponsored by Wells Fargo.

- Classified as a Flexible Employee. "Flexible Employees" are employees who work any of the following:

  - work a regular schedule with standard hours of less than 17.5 hours per week regardless of the actual hours worked,

  - work any number of hours on specific, short-term projects or assignments with a defined end date,

  - work occasional, irregular hours to fill short-term staffing needs such as PTO, short-term leaves, or periodic work volume increases, or

  - work only certain times of the month or year.

An employee of an affiliate not participating in the Plan. An "affiliate" is a business entity that is under common control with Wells Fargo & Company or is a member of an "affiliated service group," which includes Wells Fargo & Company (as those terms are defined in Section 414(b), (c), and (m) of the internal Revenue Code). In addition, Wells Fargo & Company may, at its discretion, by action of the Board Chair, President or Chief Executive Officer of Wells Fargo & Company, designate as an affiliate any business entity that is not under such "common control" or a member of such an affiliated service group.

- A person whom Wells Fargo classified as an independent contractor, or any other status by which the individual is not treated as a common law employee of Wells Fargo for purposes of withholding taxes regardless of the individual's actual status. (This applies to all periods of such service of an individual who is subsequently reclassified as an employee whether the reclassification is retroactive or prospective.)

## Disqualifying events

If you are a participant in the Plan, you become immediately ineligible for severance pay and benefits under the Plan if any of the following occur:

a. You are party to a written employment agreement or a separation agreement with Wells Fargo or an affiliate (or a predecessor of Wells Fargo or an affiliate); or you are eligible for a different severance or pay arrangement as set forth in a contractual agreement between you and Wells Fargo or an affiliate; or you are a participant in another plan or program sponsored by Wells Fargo or an affiliate (or a predecessor of Wells Fargo or an affiliate) that provides for severance, change in control, or other forms of severance pay, and the severance or separation pay under such agreement or arrangement is greater than the lump sum value severance pay that would be due under the Plan, as determined by the plan administrator.

b. You are party to an agreement or other arrangement that provides severance or separation pay less than severance pay that would be due under this Plan and you do not timely waive such benefits in a manner prescribed by the plan administrator.

c. You either continue or commence employment with Wells Fargo, accept a new position at Wells Fargo through a job posting process, accept a position with an affiliate or become registered with an affiliate such as a FiNet organization, or you continue or commence a contingent resource assignment aligned to Wells Fargo during your Severance Eligibility period.

d. You fail to cooperate with Wells Fargo's efforts to retain you as an employee by declining a reassignment to a new job or job title; or an offer of a position with Wells Fargo or an affiliate that does not qualify as substantial position change, after you have been advised either verbally or in writing that your position will be eliminated, but before your termination of employment. (See the "Substantial position change" section on this page.)

e. Wells Fargo or one of its affiliates enters into a corporate transaction with another company (including a transaction where another company acquires all or any portion of the assets, stock, or operations of Wells Fargo) and pursuant to the terms of this transaction, you are either continuously employed or offered continued employment with the other company with terms that meet the definition of a qualifying employment offer, whether or not you accept or decline the offer. **Note:** For purposes of the Plan, the terms of the qualifying employment offer must include: credit for prior service; total base pay at least equal to your total base pay prior to the transfer; a benefits package similar to the package offered by Wells Fargo prior to the transfer (i.e., the package must provide health insurance, a retirement plan/ savings plan, and paid time away); and a new work location that is not beyond a reasonable commute distance. For more information about commute distance, see the "Substantial position change" section on this page.

f. Your employment terminates during the Notice Period for a reason other than a qualifying event, including but not limited to, your resignation or retirement, your poor performance, or your violation of Wells Fargo's Code of Conduct or employment policies (e.g., engaging in other employment that constitutes a conflict of interest or removing, downloading, or sending information externally in violation of the Information Security Policy or Code of Conduct), whether or not you had already received notice of a qualifying event.

Wells Fargo reserves the right to suspend severance eligibility if you are subject to an investigation. For more information, see the "Qualifying event" section on this page.

g. On the date you would otherwise be eligible to receive written notice of a qualifying event related to position elimination or for a qualifying employment offer in connection with a corporate transaction, you are on a leave of absence and meet any of the following conditions:

  – Your leave has no statutory job reinstatement rights for a specifically defined period of time under state or federal laws, unless your leave is qualified medical leave. For more information, see the "Qualified medical leave displacements" section on page F-5.

  – Your leave has no job reinstatement rights for a specifically defined period of time under any of Wells Fargo's leave policies.

  – You have exhausted the specifically defined statutory period of time for job reinstatement under state or federal laws applicable to your leave (for example, 12 weeks under the Family Medical Leave Act or a similar state statute; five years under USERRA or a similar state statute; or state-mandated workers' compensation statutes).

h. You voluntarily request or accept a change in your position that would otherwise be a substantial position change, including the acceptance of an offer to relocate that you do not timely complete. Accepting an offer for a substantial position change that includes relocation makes you ineligible for severance under the Plan.

i. You experience a qualifying event but refuse to timely sign, or revoke, or fail to comply with the terms of the Agreement and Release. For more information, see the "Agreement and Release of Claims" section on page F-7.

j. You are not on an approved leave or you are on an approved leave beyond 26 weeks subject to the company's leave of absence requirements applicable to approved leaves.

## Qualifying event

The following events may qualify you for severance pay under the Plan — a position elimination, a substantial position change, a USERRA-related displacement, an Expatriate/Rotational Assignment Displacement, or a qualified medical leave displacement. If you think you qualify for severance pay because of a substantial position change, you must file a claim within 30 days of the date you are advised of the change to your current job. For more information, see the "Filing a claim" section on page F-8.

### Position elimination

A position elimination is an elimination of your position or any other form of reduction in force initiated by Wells Fargo. You may be eligible for severance pay if your position is eliminated.

### Substantial position change

Subject to the ineligible changes described in the "Ineligible changes" section on page F-5, you may be eligible for severance pay under the Plan, if management changes your existing position or you experience a position elimination and are offered another position, resulting in one of the following:

• A change in your work location where all of the following occur:

  – The distance between previous work location and the new work location exceeds 20 miles (one way).

  – The resultant commute (mileage) from home to the new work location exceeds your commute to the previous work location (one way).

– The resultant commute from home to the new work location exceeds 40 miles (one way), using a mapping resource for this information as determined by the company.

**Note:** Management-directed termination of an approved telecommuting agreement may qualify as a substantial position change if the resultant commute from the employee's home to the new work location exceeds 40 miles (one way).

- A reduction of more than 15% in either:

– Your covered pay, if your pay category is job class code 2 (see "Covered pay" section on page F-6) which does not include total variable compensation (TVC).

– Your total base pay, if your pay category is job class code 5, provided that your pre-change covered pay is not maintained at the pre-change level for a six-month transition period. For more information, see the "Covered pay" section on page F-6.

- A change in pay category from job class code 2 to job class code 5 or job class code 1, and vice versa, if your pre-change covered pay is not maintained at the pre-change level for a six-month transition period. No other changes in covered pay will be deemed to be a substantial position change.

If you are informed or believe you have been affected by changes to your position which represent a substantial position change, you must notify the plan administrator of your desire to receive severance pay within 30 days of notice of the substantial position change and must permit the Participating Employer 30 days to cure the change prior to the action becoming a qualifying event. If you accept the position changes, you will not be eligible for severance pay under the Plan.

## Displacements related to USERRA job reinstatement efforts

The Uniformed Services Employment and Reemployment Rights Acts (USERRA) provides employees returning from Military Leave with certain rights and protections. You may be eligible for severance pay under the Plan if upon returning from approved Military Leave, you do not have a position, due to a prior position elimination, and either Wells Fargo: 1) does not reassign you to another position, or 2) reassigns you to another position that has a substantial position change. For more information about substantial position changes, see the "Substantial position change" section on page F-4.

## Displacements related to completed international assignments or rotational assignments

Following your repatriation from a Wells Fargo-sponsored international assignment or your completion of a Wells Fargo-sponsored rotational assignment, you may be eligible for severance pay under the Plan if management does not place you in a new position or if management identifies a new position for you that qualifies as a substantial position change. For more information about substantial position changes, see the "Substantial position change" section on page F-4.

## Qualified medical leave displacements

A qualified medical leave is a medical leave certified by Wells Fargo or its leave administrator that has no job reinstatement rights or continues beyond 26 weeks and does not exceed 24 months.

If you have been released to return to work following a qualified medical leave and your prior position has been eliminated, replaced, or is no longer available, you are expected to actively engage in good faith with the job reassignment process as defined in Wells Fargo policies. Under such circumstances, if you are not offered or placed in a position with Wells Fargo, or you are offered a position that constitutes a substantial position change, you may be eligible for severance pay under the Plan.

## Ineligible changes

You are not eligible for severance pay due to other types of position changes that are not qualifying events, including but not limited to the following:

- An increase in the number of hours you work

- A decrease in the number of hours you work, unless the decrease results in a substantial position change

- A change in the days you work each week

- A change in the time you start or stop your job

- A change in your shift or shift differential

- A change in your job responsibilities, your job title, your reporting structure, or any combination thereof

- A management-directed position demotion or position change (which may include a pay reduction or work location move) that results from declining performance or some other form of corrective action

- A management-directed position transfer or lateral move that does not constitute a substantial position change

- A change in the amount of your draw or fixed allowance, if applicable

- A change in the terms of your bonus or incentive compensation plan

- A change in your covered pay due to conditions and restrictions imposed on Wells Fargo under applicable laws, rules, and regulations as determined by the plan administrator

- Termination of an alternative working schedule or arrangement, including a telecommuting agreement or discontinuance of remote work, unless the change is a qualifying event

- Prior to or during your notice period, you are offered a position in your previous business unit, from which you received written notice of displacement, and you decline the offer, if the offer was not a substantial position change

- You receive a qualifying employment offer in connection with a corporate transaction and you decline the offer

# How the Plan works

If you are an eligible participant, you have a qualifying event, you timely execute and do not revoke the Agreement and Release of Claims (Agreement) provided to you in your displacement support package, are not otherwise disqualified under the Plan, and you abide by the terms of the Agreement then:

- Your employment with Wells Fargo will be terminated at the completion of your notice period. For more information, see the "Notice period" section on page F-7.

- Following your termination of employment, you will receive biweekly post-termination severance payments on Wells Fargo's regularly scheduled paydays based on your completed years of service when the notice period ends and the "Severance pay schedule" on page F-7 (the "severance eligibility period"), unless you notify Wells Fargo's Displacement Operations in writing that you have obtained a position with another employer, in which case your remaining severance pay will be paid to you in a lump sum. For more information, see the "Severance pay" section on this page.

- The amount of your biweekly post-termination payments will be determined by your covered pay (refer to the "Covered pay" section on this page).

- You will be eligible to continue participation in some of Wells Fargo's benefit plans such as medical, dental, and vision and life insurance, as defined by the terms of each plan, during your severance eligibility period.

- Resources will be available to assist you in finding new opportunities.

- Eligible deductions that are authorized by you and/or required by state, federal, or local law will be taken from your post-termination severance payments.

- Wells Fargo may integrate your severance pay and any post-termination state-mandated disability benefits and workers' compensation benefits paid to you during the severance eligibility period so that you do not receive more than 100% of your pre-disability covered pay.

## Severance pay

The length of time you will be eligible for severance pay is based on your completed years of service and the "Severance pay schedule" on page F-7 (the "severance eligibility period"). Severance pay is your covered pay for the severance eligibility period, unless you are disqualified or the severance eligibility period ends sooner as described in the Plan.

## Covered pay

For most participants, the Plan defines "covered pay" as your base salary rate (referred to in the Plan document as the "total base pay") up to a maximum annual base salary of $350,000. This applies to all participants assigned a job class code 2 pay category on the Wells Fargo Human Capital Management System (HCMS). Base salary is your hourly rate of pay multiplied by the number of standard hours indicated on the Wells Fargo HCMS as of the end of the notice period and takes into account the number of working days each calendar year. The amount is multiplied by the number of weeks in a calendar year to determine your total base pay.

Total base pay includes amounts designated as before-tax contributions to Wells Fargo's employee benefit plans. Total base pay does not include some forms of compensation such as draw, incentives, bonuses (including but not limited to hiring, incentive, and retention bonuses), commissions, overtime pay, shift differentials, noncash awards, or perquisites (such as commute subsidies). For purposes of the Plan, total base pay is converted into a weekly amount.

If Wells Fargo's Total Rewards team assigns your position as a job class code 1 or job class code 5 pay category, the Plan defines "covered pay" as the benefits annual rate indicated on the Wells Fargo HCMS as of the end of the notice period.

Your benefits annual rate is calculated quarterly, and earnings are annualized based on base salary, draw, incentives, bonuses, or commissions paid to you in the last 12 months divided by the number of months with compensation greater than $0. Generally, quarterly calculations are completed sometime in the first several days of each quarter. The amount of covered pay is updated on the day of the calculation. The benefits annual rate calculation does not include some forms of compensation such as overtime pay, shift differentials, hiring and retention bonuses, noncash awards, and perquisites (such as auto allowance or commute subsidies, if applicable). For purposes of the Plan, the benefits annual rate is converted to a weekly amount.

If your job is assigned to the job class code 5 pay category, your covered pay (i.e., the benefits annual rate) for purposes of severance benefits is limited to a maximum of $100,000 per year (or $1,923.07 per week), unless your annual base salary (i.e., total base pay) as shown on the Wells Fargo HCMS is greater than $100,000, then your covered pay for purposes of the Plan is your annual base salary up to a maximum annual base salary of $350,000.

If Wells Fargo's Total Rewards team assigns your position at the job class code 1 pay category, your covered pay is your benefits annual rate up to $265,000 per year.

## Completed years of service

Your completed years of service are the number of complete years of employment you have with Wells Fargo and all affiliates as measured from your Continuous Service Date on the Wells Fargo HCMS as of the end of your notice period. Completed years of service for participants who become employees of Wells Fargo or an affiliate in connection with an acquisition may include prior service credit recognized by a predecessor employer provided such service credit is documented in the terms of the corporate transaction.

The "Severance pay schedule" section on this page is used to determine the duration of your severance pay. During your severance eligibility period, you will receive post termination severance pay for the number of weeks indicated in the "Severance pay schedule" on this page, unless you become disqualified or the severance eligibility period ends sooner as described in the Plan.

The duration is based on your completed years of service as of the end of the notice period. The weeks are measured from the last day of the notice period. The amount of your biweekly payment will be based on your covered pay at the end of the notice period.

## Severance pay schedule

| Completed years of service | Severance eligibility period |
| --- | --- |
| <1, 1 | 8 weeks |
| 2 | 8 weeks |
| 3 | 8 weeks |
| 4 | 8 weeks |
| 5 | 10 weeks |
| 6 | 12 weeks |
| 7 | 14 weeks |
| 8 | 16 weeks |
| 9 | 18 weeks |
| 10 | 20 weeks |
| 11 | 22 weeks |
| 12 | 24 weeks |
| 13 | 26 weeks |
| 14 | 28 weeks |
| 15 | 30 weeks |
| 16 | 32 weeks |
| 17 | 34 weeks |
| 18 | 36 weeks |
| 19 | 38 weeks |
| 20 | 40 weeks |
| 21 | 42 weeks |
| 22 | 44 weeks |
| 23 | 46 weeks |
| 24 | 48 weeks |
| 25 | 50 weeks |
| 26+ | 52 weeks |

**Note:** You are required to report immediately to Wells Fargo's Displacement Operations any overpayment paid to you during the notice period or the severance eligibility period. Pursuant to Wells Fargo's Code of Conduct, it is your responsibility to reimburse Wells Fargo for any overpayments. A Wells Fargo representative may notify you when Wells Fargo becomes aware of any overpayment.

## Agreement and Release of Claims

To receive severance pay under the Plan, you must timely sign, return, and not effectively revoke the Agreement and Release of Claims (the "Agreement") contained in your displacement packet. In signing the Agreement, you agree to give up any and all claims, actions, or lawsuits against Wells Fargo that relate to your employment with Wells Fargo. In most cases, you will be provided 45 days, beginning with the first day of the notice period to consider the terms of the Agreement, unless the qualifying event stems from a qualifying medical leave.

However, if you are eligible for severance pay, as a result of a qualified medical leave displacement, you will have a minimum of 21 days, as set forth in your displacement packet, beginning on the first day of the notice period to consider the terms of the Agreement.

If you choose not to sign the Agreement in a timely manner or if you revoke the Agreement, you will not receive severance pay.

In all cases, after you sign the Agreement, you will have a seven-day rescission period (15 days in Minnesota) during which you may take action to revoke the Agreement. If you timely sign the Agreement and do not revoke it, severance pay will begin on the next payday following the end of the notice period.

## Notice period

The notice period is the period of time designated by the company and communicated to the participant by written notice of a qualifying event during which the participant may consider signing and not revoking the Agreement. The notice period begins on the day identified in the written notice of a qualifying event and at the sole discretion of the company, may be completely nonworking, unless your business unit designates in writing that a portion of the notice period will be working. Once placed on nonworking notice, you will no longer have authorized access to Wells Fargo systems and secured premises. Changing business needs may affect your nonworking or working status during the notice period. If there is a change, you will be notified.

There may be business circumstances in which participants in a business unit may be provided a shorter or longer notice period, subject to the written approval of the Sr. Human Resource Leader of the business and applicable state law. If your notice period ends before you have completed the 45-day Agreement review period, you will be placed on an unpaid leave of absence the day following the end of your notice period

This unpaid leave of absence will be terminated immediately:

- Upon Displacement Operations' timely receipt of your executed Agreement and the passing of the revocation period;

- If you become ineligible to participate in the Plan; or

- If you exceed the Agreement review period without executing the Agreement.

If your qualifying event is related to a qualified medical leave, you will receive a minimum of 21 days' notice period, as may be applicable, after the conclusion of a job reassignment effort. You are not expected to be working, unless you accept a position with Wells Fargo.

If you are on an approved leave as of the Notice Date due to a qualifying event and are released to return on or before the expiration of 26 weeks of approved leave, you will have forty-five (45) days from the date you receive the Agreement to consider the terms of the Agreement. An approved leave is time away on company-approved leave of absence with job reinstatement rights for a specifically defined period of time under state or federal laws or under Wells Fargo's policies, as applicable, except for Personal Leave, Job Search Leave, and any involuntary leave based upon one's inability to work in the United States. Participants must comply with the company's requirements to maintain an approved leave status.

## Nature of severance pay benefits

Plan benefits are paid from the general assets of your Wells Fargo employer, or a designated fund or trust of Wells Fargo & Company. These assets are subject to the general creditors of Wells Fargo. Wells Fargo is not required to establish a trust to fund the Plan, but may choose to do so at its discretion. Plan benefits may not be assigned. Participants do not make any contributions to the Plan.

## Rights to coordinate other pay and benefits

Severance pay under the Plan is not intended to be paid in addition to other types of severance pay such as "Pay-in-lieu of notice", severance paid under other severance plan or programs, written agreements or other applicable laws, such as Worker Adjustment and Retraining Notification (WARN Act) under federal or state law, and will be integrated with any such benefits. In addition, your severance pay may be integrated with the amount of any state-mandated disability benefits and any workers' compensation benefits. Should these other benefits be payable, benefits under the Plan will be reduced accordingly, or alternatively, benefits previously paid under the Plan will be treated as having been paid to satisfy these other benefit obligations. In either case, the plan administrator will determine how to apply this provision and may override other provisions of the Plan in doing so. For more information, see the "Plan administrator" section on page F-10.

## Early termination of severance pay

Severance pay may end sooner than described in the "Severance pay schedule" on page F-7, if any of the following applies to you:

- If you accept another position with Wells Fargo or an affiliate, then your severance eligibility period will end and you will not be paid any remaining severance pay.

- If during your severance eligibility period, you notify Wells Fargo's Displacement Operation in writing that you have obtained a new position with a new employer, then your severance pay will end, and you will be paid your remaining severance in a lump sum severance payment. In the event, you accept and begin a new position with Wells Fargo or an affiliate, during the period that would have been part of your severance eligibility period, you will owe Wells Fargo the portion of the lump sum amount paid to you for the period

beginning on the rehire date through the date that the severance eligibility period would have ended if you had not requested the lump sum.

- If Wells Fargo determines that you have engaged in conduct that violates Wells Fargo's written policies or otherwise prohibits you from being employed by Wells Fargo, including but not limited to violations of Wells Fargo's Code of Conduct, whether or not such conduct had been discovered while you were actively working for Wells Fargo, then your remaining notice period, the severance eligibility period, or both will end and you will not be eligible for severance pay.

- If you are placed on an approved Military Leave either during the notice period or during your severance eligibility period, your remaining notice period (if applicable) and severance eligibility period are suspended until you are released to return to work following your completion of the approved Military Leave.

- If you die, any remaining portion of your notice period or severance eligibility period will end and your remaining notice period pay (if applicable) and severance pay will be paid to your estate or authorized personal representative as permitted by state law. This payment shall be made as a lump sum severance payment, as soon as administratively practicable, and in accordance with applicable state law following the plan administrator's notification of the participant's death.

## Compliance with laws and governance

The determination and payment of benefits under the Plan are subject to the conditions and restrictions imposed under applicable laws, rules, and regulations. Your right to or receipt of benefits under the Plan may be limited, modified, delayed, cancelled, or recovered to ensure compliance with all such applicable laws, rules, and any guidance that may be issued thereunder.

# Claims and Appeals

## Filing a claim

Typically, Wells Fargo will automatically provide notice to all eligible participants who qualify under the Plan. However, if you have not received notice of your eligibility for benefits under the Plan and you believe that you are entitled to severance pay, or if you believe you are entitled to a larger benefit than outlined in your displacement packet, you may file a written claim with the plan administrator within 90 days of the following:

- The date you receive written notice of a qualifying event and the severance pay available to you under the Plan.

- The first date you learn that you are not eligible for severance pay benefits under the Plan.

Your claim must be in writing and must explain the basis for the claim (including any documentation in support of your claim).

The claim should be delivered to the plan administrator by U.S. mail or email (preferred):

> Wells Fargo & Company Severance Plan
> Attention: Severance Plan Administrator
> MAC F2301-03A
> 1 Home Campus
> 3rd Floor
> Des Moines, IA 50328-0001
> Email: SCPPlan.Admin@wellsfargo.com

The plan administrator has delegated the claims review responsibility and administration to Wells Fargo's Severance Plan Administration group. Following the plan administrator's receipt of your claim, you will receive an acknowledgment indicating who will be reviewing your claim (the "claim reviewer"). The claim reviewer will research your claim and will notify you of the decision to approve or deny your claim.

Such notification will be provided to you, within a reasonable period of time, but no later than 90 days from the date your claim is received by the plan administrator. If the claim reviewer determines that an extension of time for processing the claim is needed, the claim reviewer may have up to an additional 90 days. If the claim reviewer reviewing your claim needs an extension, you will be notified before the expiration of the initial 90-day period stating the reason(s) why the extension is needed.

If your claim is denied in whole or in part, the written notification of the decision will state the reason or reasons why your claim was denied and reference specific Plan provisions, SPD provisions, or both, on which the denial is based. If the claim is denied because the Plan did not receive sufficient information, the claims decision will describe the additional information needed and why such information is needed. The notification of the denial decision will also include a statement of your right to bring civil action under Section 502(a) of ERISA if the claim is denied on appeal. Upon your written request, the plan administrator will provide you free of charge with copies of documents, records, or other information relied upon in the determination of your claim (but not confidential information relating to other employees or any restricted information).

### Claim denial and appeals

The plan administrator has delegated the responsibility to review appeals to the Severance Plan Appeals Committee (the "Appeals Committee"). If all or part of your claim is denied, you or your duly authorized representative may appeal the decision. Within 60 days of receiving the claim reviewer's written notice of denial, your appeal must be filed with the plan administrator (in care of the Appeals Committee at the address referenced on the right). For more information, see the "Plan administration" section on page F-10

An appeal must be in writing and must include the following information:

- Your name
- Reference to the initial decision
- All of the grounds upon which your request for review is based
- Any facts, written comments, documents, records, and other information supporting the request

As part of your appeal, you may submit any written comments, documents, records, or other information relating to your claim. The review of your appeal will take into account information submitted by you relating to your appeal, even though you may not have submitted such information with your original claim.

The Appeal Committee will notify you in writing of its final decision within a reasonable period of time, but no later than 60 days after the plan administrator receives your written request for review. In special circumstances, the Appeal Committee may have up to an additional 60 days to provide written notification of the final decision. If such an extension is required, you will be notified before the initial 60-day period expires, and such notification will state the reasons why the extension is needed and when a decision will be made. If an extension is needed because you did not provide sufficient information, the time period from the notice to you of the need for an extension to when the plan administrator receives the requested information does not count toward the time that the Appeals Committee is allowed to notify you of the final decision.

If your appeal is denied, the written notification will state the reason or reasons why the claim is denied, will reference specific applicable Plan and SPD provisions on which the denial is based, and will include a statement of your right to bring a civil action under Section 502(a) of ERISA if your claim is denied on appeal. Upon written request, the plan administrator will provide you free of charge with copies of documents, records, and other information relied upon in the determination of your claim. The plan administrator must receive your written request for information relevant to your claim no later than 120 days after the Appeals Committee sends you the final written decision.

## When coverage ends

Your participation in the Plan ends when one of the following occurs:

- You submit a request to end post termination severance pay and benefits
- You no longer meet eligibility requirements
- You have received all the benefits to which you are entitled to under the Plan

# Plan administration

The Plan name is "The Wells Fargo & Company Severance Plan." The internal Revenue Service and the Department of Labor identify the plan by its name and by the Plan identification number (PIN): 512. In addition, the internal Revenue Service has assigned employer identification number (EIN) 410449260 to Wells Fargo & Company. You should use the EIN and the PIN if you correspond with the government about the Plan.

## Plan administrator

The plan administrator is Wells Fargo's Head of Human Resources. The plan administrator has full discretionary authority to administer, construe, and interpret the Plan, including its eligibility provisions. The plan administrator may, at any time, delegate to personnel of Wells Fargo, including the Severance Plan Administration group, Employee Relations, and the Appeals Committee, such responsibilities as it considers appropriate to facilitate the day-to-day administration of the Plan. Communications related to appeals are to be addressed to the plan administrator and should be delivered by U.S. Mail or email:

> Wells Fargo & Company Severance Plan
> Attention: Severance Plan Administrator
> MAC F2301-03A
> 1 Home Campus
> 3rd Floor
> Des Moines, IA 50328-0001
> Email: SCPPlan.Admin@wellsfargo.com

No employee has a vested right to severance pay.

## Plan Year

Financial records for the Plan are kept on a calendar year basis, also known as the Plan Year, beginning on January 1 and ending on the following December 31. Provided, however, for any Amendments to the Plan that are effective on a date other than January 1, the first Plan Year under such amendment will begin on the stated effective date and will continue to the end of the calendar year. Thereafter, the Plan Year shall be the calendar year.

**Date:** October 14, 2025

To:  Severance Plan Administrator

Wells Fargo & Company Severance Plan

11625 N. Community House Road

Charlotte, NC 28277

Email: ██████████████████████

**Re:** ERISA Appeal of Severance Claim Denial

**Employee ID:** ████████████

**Original Claim Date:** July 14, 2025

---

**Dear Severance Plan Administrator,**

I am submitting this letter as a **formal ERISA appeal** of the denial of my severance benefits claim under the Wells Fargo & Company Severance Plan, originally submitted on **July 14, 2025**.

Although I understand a determination may have been sent via secure email on **September 30, 2025**, I did not receive or access any written determination prior to your October 14 correspondence. Under **ERISA §503** and **29 C.F.R. §2560.503-1**, participants must receive a timely written decision and be properly notified. Because I did not receive such notice within the prescribed timeframe, the Plan is deemed to have **procedurally denied my claim as of October 11, 2025**, and I am exercising my right to appeal.

---

**Grounds for Appeal**

1. **Procedural Denial / Missed Deadline**
   The Plan did not provide a timely written determination within the 90-day ERISA window. Delivery exclusively via secure email, without verification of receipt, does not satisfy ERISA's notice and procedural requirements.

2. **Failure to Provide Written Policy Basis for Denial**
   I was verbally advised by **Mark from the Displacement Team on June 20, 2024**, that I would "**never work at Wells Fargo again**" and that **severance eligibility requires coming off Long-Term Disability (LTD) before 24 months**. I specifically requested written clarification identifying **which section of the Severance Plan** imposes this LTD termination requirement.
   To date, no such clause has been provided, and this condition **does not appear in the written Severance Plan** or in my **displacement notice**. Conditioning severance eligibility

on termination of LTD status therefore appears to be **an unwritten and inconsistent interpretation** of Plan provisions.

3. **Permanent Disability / Inability to Participate in Reassignment**
   My Commercial Banking position was eliminated while I was on approved LTD for a permanent leukemia-related disability. I am medically unable to participate in any reassignment process. Denying severance on this basis discriminates against a permanently disabled employee and is inconsistent with the Plan's purpose and ERISA's requirement of fair and uniform administration.

---

**Requested Action**

1. Provide **written confirmation** that this appeal has been received and logged, including the name of the assigned reviewer or appeal committee.

2. Provide **a clear timeframe for completion** of the appeal review.

3. Conduct a **full and fair review** of both the procedural denial and substantive merits of my claim.

4. Identify **any specific Plan provision(s)** the administrator relied upon to deny benefits, including any reference to an LTD termination requirement.

5. Send all future correspondence regarding this appeal via **both physical mail and secure email**, with proof of delivery.

---

Given the procedural violations, lack of written Plan support, and my ongoing permanent disability, I request that my appeal be processed **without delay** and that a **final written determination** be issued promptly.

Please confirm receipt of this appeal **within three business days**.

Thank you for your immediate attention to this matter.

Sincerely,


**Leslie S. Gottlieb**



**Wells Fargo & Company**
**Severance Plan Administrator**
MAC F2301-03A
1 Home Campus, 3rd floor
Des Moines, IA  50328-0001
SCPPlan.Admin@wellsfargo.com

October 14, 2025

VIA EMAIL ONLY: leslie.gottlieb@verizon.net

Leslie Gottlieb
█████████████
████████
██████████████████

RE: Appeal Acknowledgment Letter

Dear Leslie:

The purpose of this letter is to acknowledge the receipt of your written appeal to the Wells Fargo & Company Severance Plan Appeals Committee (the "Committee") that was received by our office on 10/14/2025. The Wells Fargo & Company Severance Plan (the "Plan") is governed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, which means the Plan's appeals process is structured to comply with certain legal requirements.  The Plan provides that we have up to 60 days to respond to appeals.  The Plan further provides that we may notify you that additional time (not to exceed 60 days from the end of the initial period) is needed to review your appeal, stating the reason why the extension is needed and the new due date.

The Committee will consider your appeal in accordance with Plan terms. You can expect to receive a response to your appeal no later than 12/12/2025, unless you are notified in writing prior to that date that additional time is needed to complete a thorough review of your appeal.

Sincerely,

Christi Wilson
Lead Business Execution Consultant
For the Wells Fargo Severance Plan Administrator

© 2025 Wells Fargo Bank, N.A. All rights reserved.

**Severance Calculation Leslie S. Gottlieb vs. Wells Fargo 22 Weeks**

| | |
|---|---|
| **Biweekly Rate (Exhibit K)** | $3,830.77 |
| **Weekly Rate:** | $1,915.38 |
| **Weeks  (Plan §2.26): 22** | |
| **Total Severance** | $42,138.36 |



Wells Fargo Bank, N. A.    550 S 4th Street Minneapolis, MN 55415

L

| Name | Company | | Employee ID | Pay Period Begin | Pay Period End | Check Date | Check Number |
|------|---------|--|-------------|------------------|----------------|------------|--------------|
| Leslie Gottlieb | Wells Fargo Bank, N. A. | | | 12/03/2023 | 12/16/2023 | 12/22/2023 | |

| | Hours Worked | Gross Pay | Pre Tax Deductions | Employee Taxes | Post Tax Deductions | Net Pay |
|--|--------------|-----------|--------------------|----------------|---------------------|---------|
| Current | 0.00 | 3,830.77 | 463.08 | 635.66 | 24.54 | 2,707.49 |
| YTD | 0.00 | 103,600.02 | 29,812.38 | 15,190.06 | 12,868.40 | 45,729.18 |

| Earnings | | | | | | | Employee Taxes | | |
|----------|--|--|--|--|--|--|----------------|--|--|
| Description | Dates | Hours | Rate | Amount | YTD Hours | YTD Amount | Description | Amount | YTD |
| Regular Pay - Salar | 12/03/2023 - 12/16/2023 | 0 | 0 | 3,830.77 | 0 | 99,600.02 | OASDI | 208.80 | 5,676.53 |
| Incent Award Discre | | | 0 | | 0 | 4,000.00 | Medicare | 48.84 | 1,327.58 |
| | | | | | | | Federal Withholding | 259.35 | 5,326.43 |
| | | | | | | | State Tax - NJ | 116.37 | 2,622.64 |
| | | | | | | | SUI-Employee Paid - NJ | 0.00 | 157.21 |
| | | | | | | | NJ WFD - NJWDF | 0.00 | 17.47 |
| | | | | | | | NJ FLI - NJFLI | 2.30 | 62.20 |
| Earnings | | | | 3,830.77 | | 103,600.02 | Employee Taxes | 635.66 | 15,190.06 |

| Pre Tax Deductions | | | Post Tax Deductions | | |
|--------------------|--|--|---------------------|--|--|
| Description | Amount | YTD | Description | Amount | YTD |
| Dental Premium (Pre Tax) | 31.74 | 825.24 | AD&D (Post Tax) | 4.80 | 124.80 |
| WF 401(k) (Pre Tax) | | 17,769.30 | Legal Services (Post Tax) | 7.60 | 197.60 |
| Full Purpose FSA (Pre Tax) | 109.50 | 2,850.00 | Optional LTD (Post Tax) | 12.14 | 315.30 |
| Medical Premium (Pre Tax) | 321.84 | 8,367.84 | WF 401(k) Roth (Post Tax) | 0.00 | 12,230.70 |
| Pre Tax Deductions | 463.08 | 29,812.38 | Post Tax Deductions | 24.54 | 12,868.40 |

| Employer Paid Benefits + Differentials Included in Pay | | | Taxable Wages | | |
|-------------------------------------------------------|--|--|---------------|--|--|
| Description | Amount | YTD | Description | Amount | YTD |
| Dental Premium (ER) NT | 36.12 | 939.12 | OASDI - Taxable Wages | 3,367.69 | 91,556.94 |
| Basic Critical Ins | 0.99 | 25.74 | Medicare - Taxable Wages | 3,367.69 | 91,556.94 |
| Basic Term Life | 2.24 | 58.24 | Federal Withholding - Taxable Wages | 3,367.69 | 73,787.64 |
| Basic Long Term Disability | 10.97 | 284.90 | State Tax Taxable Wages - NJ | 3,830.77 | 85,830.72 |
| Medical Premium (ER) NT | 688.98 | 17,913.48 | | | |
| Employer Paid Benefits + Differentials Included in Pay | 739.30 | 19,221.48 | | | |

| | Federal | State |
|--|---------|-------|
| Marital Status | Married filing jointly (or Qualifying widow(er)) | Married/Civil Union Couple Joint |
| Allowances | 0 | 0 |
| Total Dependent Amount | 0 | |
| Additional Withholding | 0 | 0 |

| Payment Information | | | | |
|---------------------|--|--|--|--|
| Bank | Account Name | Account Number | USD Amount | Amount |
| | | | | 2,707.49    USD |

in  🔍    🏠 Home    👥 My Network    💼 Jobs    💬 Messaging    🔔 Notifications ¹⁶    Me ▾    ⋮⋮⋮ For Business ▾    Try Premium

## All activity

Posts    Images    Reactions

Kevin Kawand reposted this    ⋯

**Valerie Goble, MCR** ✅ • 3rd+    **+ Follow**
Executive Director, Design+Construction US South
6mo • Edited • 🌐

20 letters, each 14 feet tall, over 6,600 LEDs, 6 repellers and 1 helicopter...

That plus 2 1/2 years of planning, designing, approvals, and 3  ...more



👍❤️😍 4,700                    199 comments • 70 reposts

👍 Like

💬 Comment

🔁 Repost

✈ Send

---

**Kevin Kawand** ☑ • 1st  · · ·
LOANIQ Consultant - VP at Wells Fargo
1yr • 🌐

Great opportunity to join our team!

> **Sean Robinson** ☑ • 2nd
> Retired from Financial Services after 30 years
> 1yr • 🌐
>
> My team is hiring a Commercial Real Estate Lending Operations Manager role in Charlotte, NC!  ...more



**Commercial Real Estate Lending Operations Manager**
wd1.myworkdaysite.com

👍 7

👍 Like        💬 Comment        🔁 Repost        ✈ Send

---

**Kevin Kawand** ☑ • 1st  · · ·
LOANIQ Consultant - VP at Wells Fargo
1yr • 🌐

Excited to share that I'm starting a new position as VP - Lead Business Execution Consultant at **Wells Fargo** for their Commercial Real Estate Loan Servicing group!



Starting a New Position

👍❤️ 89                                    38 comments

👍 Like        💬 Comment        🔁 Repost        ✈ Send



**Kevin Kawand** ✅ • 1st
LOANIQ Consultant - VP at Wells Fargo
3yr • Edited • 🌐

I'm incredibly excited to announce that I've started a new position as a Technology Business Systems Consultant at **Wells Fargo** supporting all LoanIQ users!

Being allowed to make the jump from Operations to Consulting has always been the dream but, as it always seemed so far out of reach, it's finally here! I can't help but feel incredibly achieved and excited as this is another new start that will only lead me to even more opportunity.

Special thanks to the many mentors and teams I've had the pleasure of working with up to this point. You all have challenged me and provided the experience I needed.

Keep climbing!

Starting a New Position

👍❤️ 78                                    16 comments

👍 Like

💬 Comment

🔁 Repost

➤ Send

‹  Congratulations! 🎉     Wishing you the best     🎉 Well deserved  ›

**Kevin Kawand** ✅ • 1st
LOANIQ Consultant - VP at Wells Fargo
3yr • 🌐

We're hiring an AVP for our NYC location. Let me know if interested.

**Nicholas Argiriou** • 2nd                  **+ Follow**
Vice President at Santander | Syndicated Loan Expert | Financia...
3yr • 🌐

WE ARE HIRING IN NYC!

Are you an experienced Syndicated Loan Operations  ...more

**Assistant Vice President - Syndicated Loan Operations Specialist, Agency Servicing #205128**
tas-creditsuisse.taleo.net

👍 2

👍 Like

💬 Comment

↻ Repost

➤ Send

**Kevin Kawand** ✓ · 1st       · · ·
LOANIQ Consultant - VP at Wells Fargo
9yr · 🌐

Takes dedication and self determination to become something great!



**No Consistency, No Success**
Grant Cardone on LinkedIn

👍 1

👍 Like

💬 Comment

↻ Repost

➤ Send

**Kevin Kawand** ✓ · 1st       · · ·
LOANIQ Consultant - VP at Wells Fargo
9yr · 🌐

**Tahir Rafiq MBA MCIPS B.Eng** · 2nd       **+ Follow**
Director at ATR Consulting
9yr · 🌐

Thought of the day......



👍 2

👍 Like

💬 Comment

↻ Repost

⬆ Send

Show more results

Promoted ···

The future of insurance is bright.

**Leslie, explore relevant opportunities with Brightway Insurance**

Get the latest jobs and industry news

Follow

### People you may know
From Kevin's company



**Trang Le**
—·—

👤+ Connect

---



**Shameek Chakraborty** 🛡
Bachelor of Engineering in Electronics & Communication

👤+ Connect

---



**DEEPAK N** 🛡
Loan IQ-Vice President, Lead Technology Business Systems Consultant

👤+ Connect

---



**Catie Marolt**
AI Product Executive | Agentic AI | Organizational Transformation | AI Governance | AI Product Management | 🎤 Speaker 💡 Innovation...

👤+ Connect

---

**Myesha Luster** 🛡
Senior Scrum Master and Agile Coach

👤+ Connect

Show more ⌄



Promoted •••

Leslie, explore relevant opportunities with Axxess

Get the latest jobs and industry news

Follow

About     Accessibility     Help Center

Privacy & Terms ▾     Ad Choices

Advertising     Business Services ▾

Get the LinkedIn app     More

LinkedIn Corporation © 2025

  





## Kevin Kawand 🛡 · 1st

LOANIQ Consultant - VP at Wells Fargo


- Wells Fargo


- University of Wisconsin-Oshkosh

Charlotte, North Carolina, United States · **Contact info**

**500+ connections**

 **Jonathan Cohen, Demian Lackey**, and 65 other mutual connections

Message    More

## Highlights

 **You both worked at Credit Suisse**
Kevin worked at Credit Suisse after you started

✈ Message

## Activity
586 followers

Posts    Comments

---

 Kevin Kawand reposted this    ⋯

**Valerie Goble, MCR** 🛡 · 3rd+
Executive Director, Design+Construction US S...
6mo · Edited · 🌐

20 letters, each 14 feet tall, over 6,600 LEDs, 6 repellers and 1 helicopter...  ...more



1/4

👍❤️ 4,700 · 199 comments · 70 reposts

👍

---

 **Kevin Kawand**
LOANIQ Consultant
1yr · 🌐

Great opportunity to join

 **Sean Robinson**
Retired from Fina...

My team is hiring a Co
Lending Operations M
NC!  ...more



👍 7

Show all posts →

## Experience



**Wells Fargo**
3 yrs 4 mos
Charlotte, North Carolina, United States

**VP - Lead Business Execution Consultant (LoanIQ)**
Full-time
Jun 2024 - Present · 1 yr 7 mos

Assisting and executing high visibility deliverables to support ongoing conversion effort to move loans off of AFS into LoanIQ for the Commercial Real Estate Loan Servicing team. Includes automated and manual conversion events. Standard vs complex loan structures.

Created and lead all LIQ training for ongoing employees and new hires.

Manage and track all LoanIQ system incidents, issues and defects. Hold Product groups accountable for adequate testing and resolution rollouts.

Oversee acceptance of all LoanIQ enhancements as CRELS department stakeholder to support ongoing business efficiency and conversion requirements.

LEGEND AWARD WINNER 3Q25 (highest honor)

**Lead Technology Business Systems Consultant (LoanIQ)**
Contract
Sep 2022 - Jun 2024 · 1 yr 10 mos

Tier II escalation point for system issues experienced by LoanIQ users

Responsible for triage, monitoring and implementing remediation steps towards high/critical LIQ Issues that require extremely complex analysis

Utilizes LIQ expert knowledge to effectively bridge the gap between all frontend system users (DAs/Closers/Participations/Managers), backend technical teams (Prod/Non Prod/Batch/Payments/S&N/UAT/Interface), and the vendor (Finastra) to effectively triage and remediate.

Required to show successful test results for any proposed system fix or new enhancements being developed in UAT.

⬦ Problem Solving, Loans and +2 skills

---



**Credit Suisse**
Full-time · 1 yr 9 mos

**AVP - Banking Operations Specialist Manager (LoanIQ)**
Aug 2021 - Sep 2022 · 1 yr 2 mos
Raleigh, North Carolina, United States

Manager to a team of five Operation Specialists
...                                                    ...see more

⬦ Problem Solving, Loans and +4 skills

**AVP - Banking Operations Specialist (LoanIQ)**
Jan 2021 - Aug 2021 · 8 mos
Raleigh-Durham-Chapel Hill Area

Acted as the point-of-contact to the line of business, customers and lenders on 20+ deals primarily specializing in foreign currency and high    ...see more

◈ Problem Solving, Loans and +3 skills

 **Wells Fargo**
4 yrs 4 mos

**Wholesale Loan Admin - Closing and Structuring (LoanIQ)**
Full-time
Mar 2019 - Jan 2021 · 1 yr 11 mos
Charlotte, North Carolina Area

Handled the complex process of constructing new deal builds, A&Rs, amendments and all other legal changes...                    ...see more

◈ Problem Solving, Loans and +5 skills

**Loan Servicing Specialist III (LoanIQ)**
Oct 2016 - Mar 2019 · 2 yrs 6 mos
Charlotte, North Carolina

Acted as the point-of-contact to the line of business, customers and lenders on 30+ deals...                    ...see more

◈ Problem Solving, Loans and +3 skills

 **Financial Assistant**
ServiceMaster
Jul 2015 - Aug 2016 · 1 yr 2 mos
Oshkosh, Wisconsin

 **Financial Representative**
Northwestern Mutual
Dec 2014 - Apr 2015 · 5 mos
Appleton

# Education

 **University of Wisconsin–Oshkosh**
Bachelor's Degree, Finance
2014 - 2016

Grade: Graduated

Activities and societies: Accounting Club

Was highly involved with the Business Program at UWO. Built life long relationships with professors and students. Maintained a competitive GPA...

**University of Wisconsin-Fox Valley**
Associate's Degree of Arts and Science, Accounting and Business/Management
2011 - 2014

Grade: Graduated

# Licenses & certifications

life insurance

# Volunteering

 **Organizer**
Goodwill Industries International
Oct 2011 - Dec 2011 · 3 mos
Social Services

-Unpacking Clothes

## Skills

**Regulatory Standards**

 2 experiences across Credit Suisse and 1 other company

Endorse

---

**Problem Solving**

5 experiences across Wells Fargo and 1 other company

Endorse

Show all 30 skills →

## Recommendations

Recommend Kevin

**Received**   Given

**Nicholas Argiriou** · 2nd
Vice President at Santander | Syndicated Loan Expert | Financial Services Leader
March 24, 2023, Nicholas managed Kevin directly

I had the pleasure of partnering alongside Kevin during his time at Credit Suisse. Within the first year in his role, Kevin was appointed to a leadership position, overseeing direct reports. Despite his lack of previous experience in people management, Kevin quickly proved that he had natural abilities to excel with his new responsibilities. Intelligent, personable, and always willing to challenge the status quo and look for ways to improve efficiencies. Kevin will continue to be a key player in any organization he is with and I hope to cross paths again during our careers.

## Languages

**English**

## Organizations

**Student Managed Endowment Fund**
Portfolio Manager · Jan 2016 - Present

 Associated with University of Wisconsin-Oshkosh

In charge of maintaining a balanced portfolio by managing different funds, stocks, and sectors.

---

**CFA Research Challenge Team**
Team Member · Nov 2015 - Mar 2016

 Associated with University of Wisconsin-Oshkosh

I was 1 out of 4 accounting or finance majors selected to represent our college in this global competition. We were in charge of valuing our subject company by  ...see more

## Interests

**Top Voices**   Companies



**Simon Sinek**  · 3rd
Optimist, New York Times bestselling author of "Start with Why" and "The Infinite Game", and founder of The Optimism Company
8,771,202 followers

＋ Follow

---

## Causes

Economic Empowerment • Environment • Health • Human Rights • Social Services

---

Promoted •••

**MS&AD Insurance Group**
Leslie, you might like to follow MS&AD Insurance Group
Visit the company page for MS&AD Insurance Group!

**Peter** & 12 other connections also follow

Follow

---

### More profiles for you

**Srinivas Annaram** · 2nd
Technology Business Systems Consultant | LoanIQ | Digital Transformation | Product Management | Commercial Lending | Data Migration | Product...

👤⁺ Connect

---

**Mikhail Vinogradov** · 1st
Senior Loan IQ Business Analyst/Product Owner at Wells Fargo

✈ Message

---

**Lalit Dhawan** · 2nd
Head of Commercial Loan Accounting Technology

👤⁺ Connect

---

**Bakari J.** · 2nd
Vice President Product Delivery Manager

👤⁺ Connect

---

**Jennifer Nunez** in · 1st
LoanIQ Technology Business Manager @ Wells Fargo | Delivering Financial Solutions

✈ Message

Show all

---

### Explore Premium profiles

**Ranjit Raina** in · 2nd
Senior Data Steward

👤⁺ Connect



**Rochele Brown** in · 3rd+
Implementation Coordinator @ Quick Med Claims | Administration, Customer Service

✈ Message

**Saniya Lockhart** in · 2nd
Product Consultant at BlackKnight LLC

➕ Connect

**Hemavathy Rajasekaran** in · 3rd
Vice President | Lead Technology Business Systems Consultant at Wells Fargo

✈ Message

### People you may know
From Kevin's company



**Trang Le**
—-

➕ Connect

**DEEPAK N** 🛡
Loan IQ-Vice President, Lead Technology Business Systems Consultant

➕ Connect

**Sambasiva Rao** 🛡
Lead Technology Business and Systems Consultant at Wells

➕ Connect

**Shameek Chakraborty** 🛡
Bachelor of Engineering in Electronics & Communication

➕ Connect

**Catie Marolt**
AI Product Executive | Agentic AI | Organizational Transformation | AI Governance | AI Product Management | 🎤 Speaker 💡 Innovation…

➕ Connect

Show all

### You might like
Pages for you



**Goldman Sachs**
Financial Services
5,496,896 followers

2 connections work here

➕ Follow

**Morgan Stanley**
Financial Services
3,840,896 followers



27 connections work here

+ Follow

Show all

Promoted •••

**New Year Sale: $2/wk**
Start 2026 with WSJ.

**Charles** & 1,233 other connections
also follow The Wall Street Journal

**Looking for a New Job?**
Connect with over 20,000 active
recruiters & headhunters.

**Jen** & 7 other connections also
follow Experteer

About                                          Accessibility

Professional Community Policies    Careers

Privacy & Terms ▼                        Ad Choices

Sales Solutions                           Mobile

Safety Center

Talent Solutions

Marketing Solutions

Advertising

Small Business

**Questions?**
Visit our Help Center.

**Manage your account and privacy**
Go to your Settings.

**Recommendation transparency**
Learn more about Recommended Content.

Select Language

English (English)

LinkedIn Corporation © 2025

- 

On Tuesday, October 14, 2025 at 05:38:05 PM EDT, SCPPlan.Admin
<█████████████████████> wrote:

Leslie,

The September 30, 2025 claim response was not sent via FedEx; it was delivered through secure email, and therefore no physical package was sent.

For the current shipment, I've requested that delivery require a signature. The new FedEx tracking number is 3942 ████ 5352.

Thank you,
Christi

On Tuesday, October 14, 2025 at 05:21:27 PM EDT, Leslie Gottlieb <leslie.gottlieb@verizon.net> wrote:

Dear Christi,

I am attaching the FedEx tracking information for the package you referenced (tracking number 3942 5858 1456). The tracking confirms that **no signature was required for delivery**. Given the importance of this document as a formal Severance Claim determination under an ERISA-governed plan, delivery without verification of receipt is insufficient.

I **never received the package**, and the lack of signature or confirmation means the Plan's prior attempt at delivery did not ensure proper receipt.

Sincerely,
Leslie S. Gottlieb
████████████████████████
██████████████████

leslie.gottlieb@verizon.net

████████████



RE: Immediate Attention Required – Severance Claim Response Overdue

leslie.gottlieb@verizon.net

Last Sign In: Oct 14, 2025 5:04 PM

**Received:**Oct 14, 2025 9:03 AM

**Expires:**Nov 13, 2025 10:03 AM

**From:**████████████████████

**To:**leslie.gottlieb@verizon.net

**Cc:**

**Subject:**RE: Immediate Attention Required – Severance Claim Response Overdue

**Attachments:**    attachment1.eml

This message was sent securely using Zix ®

Hi Leslie,

Thank you for your email. I've attached the claim response that Megan sent on September 30, 2025. Please let me know if you encounter any issues opening the file.


Thank you,

Christi


On behalf of the Wells Fargo Severance Plan Administrator

**From:** Leslie Gottlieb <leslie.gottlieb@verizon.net>

**Sent:** Monday, October 13, 2025 8:30 PM

**To:** SCPPlan.Admin <████████████████████>; Ling, Bei ████████████████>; Board Communications <████████████████████>; Elliott, Mark W. ████████████████████>; ████████████████████;
████████████████

**Subject:** Immediate Attention Required – Severance Claim Response Overdue

Dear Ms. O'Hara,

I am following up regarding my severance benefits claim submitted on **July 14, 2025** , under the **Wells Fargo & Company Severance Plan** (Employee ID ████████ ).

In your prior correspondence, you confirmed receipt of my claim and stated that the Plan had **90 calendar days** to issue a response, with a deadline of **October 11, 2025** . You also noted that your **hope was to conclude the review and respond prior to the end of September** . As of today, **October 13, 2025** , I have not received a written decision, update, or notice of extension.

As you are aware, the **Severance Plan is governed by ERISA** , which requires plan administrators to provide a written determination within the prescribed timeframe or to communicate any need for an extension in advance. The absence of either places the Plan **out of compliance with ERISA's procedural requirements** and has left my claim unresolved beyond the stated review period.

At this point, I respectfully request **immediate confirmation** of the current status of my claim and the **specific date** when I can expect to receive the Plan's written determination. Given that both the **ERISA review period** and your own stated timeline have now passed, I trust this matter will be addressed without further delay.

I have copied **Mr. Charles Scharf** and **Ms. Bei Ling** to ensure senior leadership is aware that this claim remains pending past the required timeframe and previous internal commitments.

Thank you for your prompt attention. I look forward to your written response no later than **October 16, 2025** .

Sincerely,

**Leslie S. Gottlieb**

████████████████

████████████

leslie.gottlieb@verizon.net

████████

- Hello Leslie,

Thank you for reaching out.  We are in receipt of your claim, and I was assigned as the claim reviewer.  You were sent a claim acknowledgment letter via a secure email on July 14, 2025.  This email provided you with further information regarding the claim review process and timeline.  If for some reason you are unable to locate the secure email from Wells Fargo that was sent on that date, please let me know and I will resend it to you via a secure email.

As a reminder the Plan has 90 calendar days to respond to your claim and the deadline for our response is October 11, 2025.  My hope is that I will be able to conclude my review and respond prior to the end of the month.

Please let me know if you have additional questions.

Thank you,

Megan O'Hara, SPHR

Human Resources l Separation Services Group l Severance Claims

Wells Fargo Human Resources  |  11625 N Community House Rd  |  Charlotte, NC  28277

████████████

Telephone#: ████████Office  |  ███████ Fax

████████████████

Pronoun: She/Her/Hers

This email message is being sent solely for use by the intended recipient(s) and may contain confidential and/or restricted information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by phone or reply by email, delete the original message and destroy all copies.  Thank you.

**From:** Leslie Gottlieb <**leslie.gottlieb@verizon.net**>
**Sent:** Saturday, September 6, 2025 11:06 PM
**To:** SCPPlan.Admin <███████████████████████>; Ling, Bei <███████████████████>
**Subject:** Follow-Up on Severance Benefits Claim– Leslie S. Gottlieb (Employee ID ████████)

**Date:**  September 6, 2025

**To:** Severance Plan Administrator
Wells Fargo & Company

**Re:** Follow-Up on Formal Severance Benefits Claim
**Employee:** Leslie S. Gottlieb
**Employee ID:** ████████████
**Original Claim Date:** July 14, 2025

---

Dear Severance Plan Administrator,

I am writing to follow up on my **formal written claim for severance benefits** submitted on **July 14, 2025** , under the Wells Fargo & Company Severance Plan. To date, I have not received any written response to my claim.

**Claim Summary** My claim is based on the elimination of my Commercial Banking position (documented February 6, 2024) while I was on approved medical leave. As I am permanently disabled due to leukemia and unable to return to work, I cannot participate in the job reassignment process referenced in the displacement letter.

**Current Status & Concerns**

1. **No Response Received:** It has been approximately 8 weeks since my initial claim submission with no written acknowledgment or response.

2. **ERISA Timeline Requirements:** Under ERISA plan claims procedures, I understand that plan administrators must respond to benefit claims within specified timeframes, typically within 90 days of receipt.

3. **Ongoing Disability Status:** I remain on approved Long-Term Disability and continue to be permanently unable to return to work, which strengthens the basis for my severance claim.

**Requested Action** I respectfully request:

1. **Immediate written acknowledgment** that my July 14, 2025 severance claim was received and is being processed.

2. **Status update** on the review of my claim, including expected timeline for decision.

3. **Written decision** on my severance benefits eligibility, including:

   - If approved: Details of severance payment amount and timing

   - If denied: Specific policy provisions and legal grounds for denial, as required under ERISA

1. **Clarification** regarding any additional documentation needed to process my claim.

**Documentation Reference** Please refer to my complete claim submission dated July 14, 2025, which included:

- Detailed background and employment history

- Legal basis under the Severance Plan and ERISA

- Specific reference to the February 6, 2024 position elimination letter

- Request for approximately 22 weeks of severance pay based on 11 years of service

I appreciate your prompt attention to this matter and look forward to your written response within the next 10 business days.

Sincerely,

**Leslie S. Gottlieb**

███████████████████

███████████

**leslie.gottlieb@verizon.net**

[REDACTED]

---

**See below:** Copy of original July 14, 2025 severance claim letter

On Monday, July 14, 2025 at 03:47:28 PM EDT, Leslie Gottlieb <**leslie.gottlieb@verizon.net**> wrote:

Dear Severance Plan Administrator,

I am writing to submit a **formal written claim** for severance benefits under the Wells Fargo & Company Severance Plan based on the **elimination of my position** within Commercial Banking, as documented in the organizational changes letter dated **February 6, 2024**.

**Background Summary**

- o  **Name:** Leslie S. Gottlieb

- o  **Employee ID:** [REDACTED]

- o  **Position:** Commercial Banking (eliminated effective February 6, 2024)

- o  **Employment Start Date:** Approximately 2013 (11 years of service)

- o  **Leave Status:** On approved Long-Term Disability since July 2024 due to permanent disability (leukemia)

- o  **Current Benefits:** Receiving SSDI and LTD. Receiving medical and dental insurance, paying premiums as required.

**Basis for Claim**

Per the **Wells Fargo Severance Plan** and the February 6, 2024 letter:

1. **My position was officially eliminated** while I was on approved medical leave.

2. The letter states: *"If you are released to return to work after 26 weeks but prior to the expiration of Wells Fargo's 24-month Extended Absence policy period, you may be eligible to participate in an unpaid job reassignment process at that time… You may be eligible for severance if not placed in another position or offered a Substantial Position Change."*

3. As I am permanently disabled and unable to return to work, I cannot participate in the reassignment process.

4. I was advised verbally by Mark from the Displacement Team (6/20/24) that I would "never work at Wells Fargo again" and that severance eligibility requires coming off LTD before 24 months. **I request written clarification** of which specific policy clause imposes this LTD termination condition, as it does not appear in the written Severance Plan or my displacement notice.

**Legal Considerations**

o The **Severance Plan is an ERISA-governed benefit plan**, and the elimination of my role constitutes a Qualifying Event.

o Conditioning severance on my ability to engage in job reassignment despite permanent disability **may violate the ADA** by penalizing a disabled employee differently from an able-bodied counterpart whose role was eliminated.

**Requested Action**

I respectfully request:

1. **Full severance pay** in accordance with my tenure (approximately 22 weeks based on 11 years of service).

2. **Written confirmation** of Wells Fargo's position regarding severance eligibility for employees who are permanently disabled and unable to engage in job reassignment following a position elimination.

Please consider this my formal claim under the Severance Plan. If denied, I request a **written explanation of the specific policy and legal grounds for denial** within the required timeframe under ERISA plan claims procedures.

Thank you for your attention to this matter. I look forward to your prompt response.

Sincerely,

**Leslie S. Gottlieb**

██████████████

██████████

[leslie.gottlieb@verizon.net](mailto:leslie.gottlieb@verizon.net)

████████

○

○

○

○

---

- Reply
- ,
- Reply All
- or
- Forward

Send

Attach [        ]

Add GIF

Add stationery

More

SaveDelete

13Calendar,October13

Settings

Leslie Gottlieb

**leslie.gottlieb@verizon.net**

On Monday, September 8, 2025 at 08:20:57 AM EDT, SCPPlan.Admin <**scpplan.admin@wellsfargo.com**> wrote:

Hello Leslie,

Thank you for reaching out.  We are in receipt of your claim, and I was assigned as the claim reviewer.  You were sent a claim acknowledgment letter via a secure email on July 14, 2025.  This email provided you with further information regarding the claim review process and timeline.  If for some reason you are unable to locate the secure email from Wells Fargo that was sent on that date, please let me know and I will resend it to you via a secure email.

As a reminder the Plan has 90 calendar days to respond to your claim and the deadline for our response is <u>October 11, 2025</u>.  My hope is that I will be able to conclude my review and respond prior to the end of the month.

Please let me know if you have additional questions.

Thank you,

Megan O'Hara, SPHR

Human Resources l Separation Services Group l Severance Claims

Wells Fargo Human Resources  |  11625 N Community House Rd  |  Charlotte, NC  28277

MAC: ███████

Telephone#: ██████████ Office  |  ██████████ Fax

███████████████████

Pronoun: She/Her/Hers

This email message is being sent solely for use by the intended recipient(s) and may contain confidential and/or restricted information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by phone or reply by email, delete the original message and destroy all copies.  Thank you.

**From:** Leslie Gottlieb <**leslie.gottlieb@verizon.net**>
**Sent:** Saturday, September 6, 2025 11:06 PM
**To:** SCPPlan.Admin ██████████████████████████>; Ling, Bei ████████████████████████>
**Subject:** Follow-Up on Severance Benefits Claim– Leslie S. Gottlieb (Employee ID ██████████ )

**Date:**  September 6, 2025

**To:** Severance Plan Administrator
Wells Fargo & Company

**Re:** Follow-Up on Formal Severance Benefits Claim
**Employee:** Leslie S. Gottlieb
**Employee ID:** ███████████
**Original Claim Date:** July 14, 2025

Dear Severance Plan Administrator,

I am writing to follow up on my **formal written claim for severance benefits** submitted on **July 14, 2025** , under the Wells Fargo & Company Severance Plan. To date, I have not received any written response to my claim.

**Claim Summary** My claim is based on the elimination of my Commercial Banking position (documented February 6, 2024) while I was on approved medical leave. As I am permanently disabled due to leukemia and unable to return to work, I cannot participate in the job reassignment process referenced in the displacement letter.

**Current Status & Concerns**

1. **No Response Received:** It has been approximately 8 weeks since my initial claim submission with no written acknowledgment or response.

2. **ERISA Timeline Requirements:** Under ERISA plan claims procedures, I understand that plan administrators must respond to benefit claims within specified timeframes, typically within 90 days of receipt.

3. **Ongoing Disability Status:** I remain on approved Long-Term Disability and continue to be permanently unable to return to work, which strengthens the basis for my severance claim.

**Requested Action** I respectfully request:

1. **Immediate written acknowledgment** that my July 14, 2025 severance claim was received and is being processed.

2. **Status update** on the review of my claim, including expected timeline for decision.

3. **Written decision** on my severance benefits eligibility, including:

   o If approved: Details of severance payment amount and timing

   o If denied: Specific policy provisions and legal grounds for denial, as required under ERISA

1. **Clarification** regarding any additional documentation needed to process my claim.

**Documentation Reference** Please refer to my complete claim submission dated July 14, 2025, which included:

- Detailed background and employment history

- Legal basis under the Severance Plan and ERISA

- Specific reference to the February 6, 2024 position elimination letter

- Request for approximately 22 weeks of severance pay based on 11 years of service

I appreciate your prompt attention to this matter and look forward to your written response within the next 10 business days.

Sincerely,

**Leslie S. Gottlieb**



[leslie.gottlieb@verizon.net](mailto:leslie.gottlieb@verizon.net)

---

**See below:** Copy of original July 14, 2025 severance claim letter

On Monday, July 14, 2025 at 03:47:28 PM EDT, Leslie Gottlieb <[leslie.gottlieb@verizon.net](mailto:leslie.gottlieb@verizon.net)> wrote:

Dear Severance Plan Administrator,

I am writing to submit a **formal written claim** for severance benefits under the Wells Fargo & Company Severance Plan based on the **elimination of my position** within Commercial Banking, as documented in the organizational changes letter dated **February 6, 2024**.

**Background Summary**

- **Name:** Leslie S. Gottlieb

- **Employee ID:** 00001352682

- **Position:** Commercial Banking (eliminated effective February 6, 2024)

- **Employment Start Date:** Approximately 2013 (11 years of service)

- **Leave Status:** On approved Long-Term Disability since July 2024 due to permanent disability (leukemia)

- **Current Benefits:** Receiving SSDI and LTD. Receiving medical and dental insurance, paying premiums as required.

**Basis for Claim**

Per the **Wells Fargo Severance Plan** and the February 6, 2024 letter:

1. **My position was officially eliminated** while I was on approved medical leave.

2. The letter states: *"If you are released to return to work after 26 weeks but prior to the expiration of Wells Fargo's 24-month Extended Absence policy period, you may be eligible to participate in an unpaid job reassignment process at that time… You may be eligible for severance if not placed in another position or offered a Substantial Position Change."*

3. As I am permanently disabled and unable to return to work, I cannot participate in the reassignment process.

4. I was advised verbally by Mark from the Displacement Team (6/20/24) that I would "never work at Wells Fargo again" and that severance eligibility requires coming off LTD before 24 months. **I request written clarification** of which specific policy clause imposes this LTD termination condition, as it does not appear in the written Severance Plan or my displacement notice.

**Legal Considerations**

- The **Severance Plan is an ERISA-governed benefit plan**, and the elimination of my role constitutes a Qualifying Event.

- Conditioning severance on my ability to engage in job reassignment despite permanent disability **may violate the ADA** by penalizing a disabled employee differently from an able-bodied counterpart whose role was eliminated.

**Requested Action**

I respectfully request:

1. **Full severance pay** in accordance with my tenure (approximately 22 weeks based on 11 years of service).

2. **Written confirmation** of Wells Fargo's position regarding severance eligibility for employees who are permanently disabled and unable to engage in job reassignment following a position elimination.

Please consider this my formal claim under the Severance Plan. If denied, I request a **written explanation of the specific policy and legal grounds for denial** within the required timeframe under ERISA plan claims procedures.

Thank you for your attention to this matter. I look forward to your prompt response.

Sincerely,

**Leslie S. Gottlieb**

███████████████████

███████████████

leslie.gottlieb@verizon.net

████████████


**Received:** Sep 30, 2025 5:07 PM
**Expires:** Oct 30, 2025 5:07 PM
**From:** "Ohara, Megan" < ████████████████████ >  *Sending*
*for* ███████████████████████
**To:** leslie.gottlieb@verizon.net
**Cc:**
**Subject:** Outcome of Your Severance Claim
**Attachments:**   SCPP_claim_response_Leslie_Gottlieb
09302025.pdf ,    Amended_Wells_Fargo_Severance_Plan_2025.pdf

**This message was sent securely using Zix ®**

Hello Leslie,
I have completed the review of your claim for benefits under the Wells Fargo Severance Plan and the response to your claim is attached to this message.  I have also provided the relevant Severance Plan document for your reference.
Thank you,
Megan O'Hara, SPHR
Human Resources l Separation Services Group l Severance Claims

Wells Fargo Human Resources  |  11625 N Community House Rd  |  Charlotte, NC  28277
████████████
Telephone#: ████████ Office  | ██████████ Fax

████████████████████

Pronoun: She/Her/Hers

This email message is being sent solely for use by the intended recipient(s) and may contain confidential and/or restricted information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by phone or reply by email, delete the original message and destroy all copies.  Thank you.


This message was secured by **Zix** ® .
Hi Leslie,
Thank you for your email. I've attached the claim response that Megan sent on September 30, 2025.
Please let me know if you encounter any issues opening the file.

Thank you,
Christi

On behalf of the Wells Fargo Severance Plan Administrator

**From:** Leslie Gottlieb <leslie.gottlieb@verizon.net>
**Sent:** Monday, October 13, 2025 8:30 PM
**To:** SCPPlan.Admin <███████████████████>; Ling, Bei ████████████████████>; Board Communications ████████████████████████>; Elliott, Mark W. <███████████████████>; ██████████████████████████████
**Subject:** Immediate Attention Required – Severance Claim Response Overdue

Dear Ms. O'Hara,
I am following up regarding my severance benefits claim submitted on **July 14, 2025** , under the **Wells Fargo & Company Severance Plan** (Employee ID ████████ ).
In your prior correspondence, you confirmed receipt of my claim and stated that the Plan had **90 calendar days** to issue a response, with a deadline of **October 11, 2025** . You also noted that your **hope was to conclude the review and respond prior to the end of September** . As of today, **October 13, 2025** , I have not received a written decision, update, or notice of extension.
As you are aware, the **Severance Plan is governed by ERISA** , which requires plan administrators to provide a written determination within the prescribed timeframe or to communicate any need for an extension in advance. The absence of either places the Plan **out of compliance with ERISA's procedural requirements** and has left my claim unresolved beyond the stated review period.
At this point, I respectfully request **immediate confirmation** of the current status of my claim and the **specific date** when I can expect to receive the Plan's written determination. Given that both the **ERISA review period** and your own stated timeline have now passed, I trust this matter will be addressed without further delay.
I have copied **Mr. Charles Scharf** and **Ms. Bei Ling** to ensure senior leadership is aware that this claim remains pending past the required timeframe and previous internal commitments.
Thank you for your prompt attention. I look forward to your written response no later than **October 16, 2025** .
Sincerely,
**Leslie S. Gottlieb**
████████████████████
████████████
[leslie.gottlieb@verizon.net](mailto:leslie.gottlieb@verizon.net)
██████████████

- Hello Leslie,

  Thank you for reaching out.  We are in receipt of your claim, and I was assigned as the claim reviewer.  You were sent a claim acknowledgment letter via a secure email on July 14, 2025.  This email provided you with further information regarding the claim review

process and timeline.  If for some reason you are unable to locate the secure email from Wells Fargo that was sent on that date, please let me know and I will resend it to you via a secure email.

As a reminder the Plan has 90 calendar days to respond to your claim and the deadline for our response is <u>October 11, 2025</u>.  My hope is that I will be able to conclude my review and respond prior to the end of the month.

Please let me know if you have additional questions.

Thank you,

Megan O'Hara, SPHR
Human Resources | Separation Services Group | Severance Claims

Wells Fargo Human Resources  |  11625 N Community House Rd  |  Charlotte, NC  28277
MAC:  D1185-032
Telephone#: ██████████Office  | ██████████ Fax

**megan.ohara@wellsfargo.com**

Pronoun: She/Her/Hers

This email message is being sent solely for use by the intended recipient(s) and may contain confidential and/or restricted information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by phone or reply by email, delete the original message and destroy all copies.  Thank you.

**From:** Leslie Gottlieb <**leslie.gottlieb@verizon.net**>
**Sent:** Saturday, September 6, 2025 11:06 PM
**To:** SCPPlan.Admin <████████████████████>; Ling, Bei <████████████████████
**Subject:** Follow-Up on Severance Benefits Claim– Leslie S. Gottlieb (Employee ID ████████████)

**Date:**  September 6, 2025
**To:** Severance Plan Administrator
Wells Fargo & Company
**Re:** Follow-Up on Formal Severance Benefits Claim
**Employee:** Leslie S. Gottlieb
**Employee ID:** ████████████
**Original Claim Date:** July 14, 2025

---

Dear Severance Plan Administrator,
I am writing to follow up on my **formal written claim for severance benefits** submitted on **July 14, 2025** , under the Wells Fargo & Company Severance Plan. To date, I have not received any written response to my claim.
**Claim Summary** My claim is based on the elimination of my Commercial Banking position (documented February 6, 2024) while I was on approved medical leave. As I am permanently disabled due to leukemia and unable to return to work, I cannot participate in the job reassignment process referenced in the displacement letter.

**Current Status & Concerns**

1. **No Response Received:** It has been approximately 8 weeks since my initial claim submission with no written acknowledgment or response.
2. **ERISA Timeline Requirements:** Under ERISA plan claims procedures, I understand that plan administrators must respond to benefit claims within specified timeframes, typically within 90 days of receipt.
3. **Ongoing Disability Status:** I remain on approved Long-Term Disability and continue to be permanently unable to return to work, which strengthens the basis for my severance claim.

**Requested Action** I respectfully request:

1. **Immediate written acknowledgment** that my July 14, 2025 severance claim was received and is being processed.
2. **Status update** on the review of my claim, including expected timeline for decision.
3. **Written decision** on my severance benefits eligibility, including:
   - If approved: Details of severance payment amount and timing
   - If denied: Specific policy provisions and legal grounds for denial, as required under ERISA
1. **Clarification** regarding any additional documentation needed to process my claim.

**Documentation Reference** Please refer to my complete claim submission dated July 14, 2025, which included:

- Detailed background and employment history
- Legal basis under the Severance Plan and ERISA
- Specific reference to the February 6, 2024 position elimination letter
- Request for approximately 22 weeks of severance pay based on 11 years of service

I appreciate your prompt attention to this matter and look forward to your written response within the next 10 business days.

Sincerely,

**Leslie S. Gottlieb**

████████████████████

████████████

leslie.gottlieb@verizon.net

████████████

**See below:** Copy of original July 14, 2025 severance claim letter

On Monday, July 14, 2025 at 03:47:28 PM EDT, Leslie Gottlieb <**leslie.gottlieb@verizon.net**> wrote:

Dear Severance Plan Administrator,
I am writing to submit a **formal written claim** for severance benefits under the Wells Fargo & Company Severance Plan based on the **elimination of my position** within Commercial Banking, as documented in the organizational changes letter dated **February 6, 2024**.
**Background Summary**
- **Name:** Leslie S. Gottlieb
- **Employee ID:** ███████████
- **Position:** Commercial Banking (eliminated effective February 6, 2024)
- **Employment Start Date:** Approximately 2013 (11 years of service)
- **Leave Status:** On approved Long-Term Disability since July 2024 due to permanent disability (leukemia)
- **Current Benefits:** Receiving SSDI and LTD. Receiving medical and dental insurance, paying premiums as required.

**Basis for Claim**
Per the **Wells Fargo Severance Plan** and the February 6, 2024 letter:
1. **My position was officially eliminated** while I was on approved medical leave.
2. The letter states: *"If you are released to return to work after 26 weeks but prior to the expiration of Wells Fargo's 24-month Extended Absence policy period, you may be eligible to participate in an unpaid job reassignment process at that time… You may be eligible for severance if not placed in another position or offered a Substantial Position Change."*
3. As I am permanently disabled and unable to return to work, I cannot participate in the reassignment process.
4. I was advised verbally by Mark from the Displacement Team (6/20/24) that I would "never work at Wells Fargo again" and that severance eligibility requires coming off LTD before 24 months. **I request written clarification** of which

specific policy clause imposes this LTD termination condition, as it does not appear in the written Severance Plan or my displacement notice.

**Legal Considerations**

- The **Severance Plan is an ERISA-governed benefit plan**, and the elimination of my role constitutes a Qualifying Event.
- Conditioning severance on my ability to engage in job reassignment despite permanent disability **may violate the ADA** by penalizing a disabled employee differently from an able-bodied counterpart whose role was eliminated.

**Requested Action**

I respectfully request:

1. **Full severance pay** in accordance with my tenure (approximately 22 weeks based on 11 years of service).
2. **Written confirmation** of Wells Fargo's position regarding severance eligibility for employees who are permanently disabled and unable to engage in job reassignment following a position elimination.

Please consider this my formal claim under the Severance Plan. If denied, I request a **written explanation of the specific policy and legal grounds for denial** within the required timeframe under ERISA plan claims procedures. Thank you for your attention to this matter. I look forward to your prompt response.

Sincerely,

**Leslie S. Gottlieb**

leslie.gottlieb@verizon.net

- 
- 
- 
- 

---

- Reply
- ,
- Reply All
-  or
- Forward

Send
Attach [        ]

Add GIF
Add stationery
More
SaveDelete
13Calendar,October13
Settings


Leslie Gottlieb
**leslie.gottlieb@verizon.net**


On Monday, September 8, 2025 at 08:20:57 AM EDT, SCPPlan.Admin
<██████████████████████████> wrote:


Hello Leslie,

Thank you for reaching out.  We are in receipt of your claim, and I was assigned as the claim reviewer.  You were sent a claim acknowledgment letter via a secure email on July 14, 2025.  This email provided you with further information regarding the claim review process and timeline.  If for some reason you are unable to locate the secure email from Wells Fargo that was sent on that date, please let me know and I will resend it to you via a secure email.

As a reminder the Plan has 90 calendar days to respond to your claim and the deadline for our response is October 11, 2025.  My hope is that I will be able to conclude my review and respond prior to the end of the month.

Please let me know if you have additional questions.

Thank you,

Megan O'Hara, SPHR
Human Resources I Separation Services Group I Severance Claims

Wells Fargo Human Resources  |  11625 N Community House Rd  |  Charlotte, NC  28277
██████████████
Telephone#: ██████████Office  |  ████████ Fax

**megan.ohara@wellsfargo.com**

Pronoun: She/Her/Hers

This email message is being sent solely for use by the intended recipient(s) and may contain confidential and/or restricted information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by phone or reply by email, delete the original message and destroy all copies.  Thank you.


**From:** Leslie Gottlieb <**leslie.gottlieb@verizon.net**>
**Sent:** Saturday, September 6, 2025 11:06 PM
**To:** SCPPlan.Admin <████████████████████████>; Ling, Bei
<████████████████>

**Subject:** Follow-Up on Severance Benefits Claim– Leslie S. Gottlieb (Employee ID ██████████)

**Date:** September 6, 2025
**To:** Severance Plan Administrator
Wells Fargo & Company
**Re:** Follow-Up on Formal Severance Benefits Claim
**Employee:** Leslie S. Gottlieb
**Employee ID:** ██████████
**Original Claim Date:** July 14, 2025

---

Dear Severance Plan Administrator,
I am writing to follow up on my **formal written claim for severance benefits** submitted on **July 14, 2025** , under the Wells Fargo & Company Severance Plan. To date, I have not received any written response to my claim.

**Claim Summary** My claim is based on the elimination of my Commercial Banking position (documented February 6, 2024) while I was on approved medical leave. As I am permanently disabled due to leukemia and unable to return to work, I cannot participate in the job reassignment process referenced in the displacement letter.

**Current Status & Concerns**
1. **No Response Received:** It has been approximately 8 weeks since my initial claim submission with no written acknowledgment or response.
2. **ERISA Timeline Requirements:** Under ERISA plan claims procedures, I understand that plan administrators must respond to benefit claims within specified timeframes, typically within 90 days of receipt.
3. **Ongoing Disability Status:** I remain on approved Long-Term Disability and continue to be permanently unable to return to work, which strengthens the basis for my severance claim.

**Requested Action** I respectfully request:
1. **Immediate written acknowledgment** that my July 14, 2025 severance claim was received and is being processed.
2. **Status update** on the review of my claim, including expected timeline for decision.
3. **Written decision** on my severance benefits eligibility, including:
   - If approved: Details of severance payment amount and timing
   - ████████████████enied: Specific policy provisions and legal grounds for ████████████████ial, as required under ERISA
1. **Clarification** regarding any additional documentation needed to process my claim.

**Documentation Reference** Please refer to my complete claim submission dated July 14, 2025, which included:
- Detailed background and employment history
- Legal basis under the Severance Plan and ERISA
- Specific reference to the February 6, 2024 position elimination letter
- Request for approximately 22 weeks of severance pay based on 11 years of service

I appreciate your prompt attention to this matter and look forward to your written response within the next 10 business days.
Sincerely,
**Leslie S. Gottlieb**
██████████████████

leslie.gottlieb@verizon.net
██████████████

**See below:** Copy of original July 14, 2025 severance claim letter

On Monday, July 14, 2025 at 03:47:28 PM EDT, Leslie Gottlieb <u>leslie.gottlieb@verizon.net</u>> wrote:

Dear Severance Plan Administrator,
I am writing to submit a **formal written claim** for severance benefits under the Wells Fargo & Company Severance Plan based on the **elimination of my position** within Commercial Banking, as documented in the organizational changes letter dated **February 6, 2024**.

**Background Summary**

- **Name:** Leslie S. Gottlieb
- **Employee ID:** ███████████
- **Position:** Commercial Banking (eliminated effective February 6, 2024)
- **Employment Start Date:** Approximately 2013 (11 years of service)
- **Leave Status:** On approved Long-Term Disability since July 2024 due to permanent disability (leukemia)
- **Current Benefits:** Receiving SSDI and LTD. Receiving medical and dental insurance, paying premiums as required.

**Basis for Claim**

Per the **Wells Fargo Severance Plan** and the February 6, 2024 letter:

1. **My position was officially eliminated** while I was on approved medical leave.
2. The letter states: *"If you are released to return to work after 26 weeks but prior to the expiration of Wells Fargo's 24-month Extended Absence policy period, you may be eligible to participate in an unpaid job reassignment process at that time… You may be eligible for severance if not placed in another position or offered a Substantial Position Change."*
3. As I am permanently disabled and unable to return to work, I cannot participate in the reassignment process.
4. I was advised verbally by Mark from the Displacement Team (6/20/24) that I would "never work at Wells Fargo again" and that severance eligibility requires coming off LTD before 24 months. **I request written clarification** of which specific policy clause imposes this LTD termination condition, as it does not appear in the written Severance Plan or my displacement notice.

**Legal Considerations**

- The **Severance Plan is an ERISA-governed benefit plan**, and the elimination of my role constitutes a Qualifying Event.
- Conditioning severance on my ability to engage in job reassignment despite permanent disability **may violate the ADA** by penalizing a disabled employee differently from an able-bodied counterpart whose role was eliminated.

**Requested Action**

I respectfully request:

1. **Full severance pay** in accordance with my tenure (approximately 22 weeks based on 11 years of service).
2. **Written confirmation** of Wells Fargo's position regarding severance eligibility for employees who are permanently disabled and unable to engage in job reassignment following a position elimination.

Please consider this my formal claim under the Severance Plan. If denied, I request a **written explanation of the specific policy and legal grounds for denial** within the required timeframe under ERISA plan claims procedures.
Thank you for your attention to this matter. I look forward to your prompt response.

Sincerely,

**Leslie S. Gottlieb**

██████████████████

████████████

leslie.gottlieb@verizon.net

████████████

This message was secured by **Zix** ® .

**Received:** Oct 14, 2025 4:54 PM
**Expires:** Nov 13, 2025 5:54 PM
**From** ███████████████████████████
**To:** leslie.gottlieb@verizon.net
**Cc:**
**Subject:** Severance Plan Appeal Request Received
**Attachments:**   Appeal Acknowlegement Leslie Gottlieb.pdf

**This message was sent securely using Zix ®**

Leslie,

Your Severance Plan appeal request has been received.  Attached you will find a formal acknowledgment which outlines the next steps in the Severance Plan Appeal process, including the timeline for review and response. A hard copy of this acknowledgment will also be mailed to you for your records.
Additionally, I will include the Severance Claim response letter and the Severance Plan document that were previously sent to you on September 30, 2025. These materials will be sent via FedEx, and the tracking number is **3942** ████ **1456** .

In your previous email sent on October 14, 2025, you requested "a copy of the complete claim determination in accessible format (not just an attached email shell)." To ensure we address your concerns appropriately, could you please clarify the specific accessibility issues you encountered with the original claim response document?

If you have any questions or need further assistance, please don't hesitate to reach out.

Thank you,
Christi

On behalf of the Wells Fargo Severance Plan Administrator

This message was secured by **Zix** ® .



**HR Shared Services**
Displacement Operations
P.O. Box 29781
Phoenix, AZ 85038 - 9781
Tel :  ███████████

February 6, 2024

Leslie S. Gottlieb
███████████████████

Subject:  Organizational Changes within COMMERCIAL BANKING

Dear Leslie S. Gottlieb:

Due to recent changes in business needs, your business group will be experiencing some reductions in workforce.  As a result, your position will be affected by either a position elimination or a substantial position change as defined by the Wells Fargo & Company Severance Plan (the "Plan"). Our records indicate you are on an approved leave of absence, or you are awaiting a decision for a pending leave. Read below to understand how your displacement will be handled and actions you must take once you are able to return to work.

All Wells Fargo employees are given a notice period when a position is eliminated. If the notification manager was unsuccessful in reaching you on the notice date, this letter serves as your official written notice of displacement. Your Notice Period begins on February 6, 2024. On April 5, 2024 your Notice Period will end unless there is a change in your employment status before that date.

## What you need to know

Subject to the Extended Absence Policy, your employment with Wells Fargo will be preserved while you are on approved leave. Medical, dental, vision, and life insurance benefits will also continue during your leave if the appropriate premiums are paid monthly, on the specified due date. If you are released to return to work within 26 weeks of your leave begin date, you will remain eligible for severance benefits under the Wells Fargo & Company Severance Plan.

If you have a pending request for leave that is not ultimately approved before the notice period end date, you will only be eligible to receive notice period pay and/or severance retroactively if you had enough accrued unused PTO to cover all absences through the displacement Notice Date. If you do not have enough accrued unused PTO to cover all absences through the displacement Notice Date, you will not be eligible for severance benefits and your employment may be terminated.

If you are on family medical leave or parental leave, your displacement support packet will be sent to you at the conclusion of your leave.

If you are on medical leave for your own health condition, in most cases, total medical leave time can continue for up to 24 continuous months if you continue to meet the eligibility requirements for approved leave.

© 2023 Wells Fargo Bank, N.A. All rights reserved.                    *ND018008*

If you are released to return to work after 26 weeks but prior to the expiration of Wells Fargo's 24-month Extended Absence policy period, inform both Lincoln Financial Group and Employee Care of your expected return status and date. You may be eligible to participate in an unpaid job reassignment process at that time. You will need to contact Lincoln Financial Group or Employee Care to confirm your ability to return to work. The job reassignment process will not begin until the medical release is received and confirmed, which includes the return date and any restrictions, if applicable.

## What you need to do

☐ **Continue** to submit medical documentation to support your leave to Lincoln Financial Group when requested.

☐ **Continue** to submit medical, dental, vision and life insurance benefit premiums during your leave, if applicable, as indicated on your monthly billing statement.

☐ **If you are on medical leave for your own health condition, obtain and submit to Lincoln Financial Group** a medical release to return to work from your treating physician if you can return to work. Submit the release before or on your medical release date, but prior to the expiration of the 24-month Extended Absence policy period. The medical release may be submitted any time prior to the effective date of the release, but any job reassignment process will not begin until the release is received and confirmed.

**Ensure the following information is included on your medical release:**
- o   Treating physician's name and contact information
- o   Effective date of release to return to work
- o   Any medical restrictions and/or requests for accommodations

**Submit that medical release information to:**
Wells Fargo's Leaves Administrator, Lincoln Financial Group
Fax: ███████████
Email: ███████████

Mailing Address: Leave of Absence Claims
P.O. Box 49410
Charlotte, NC 28277

☐ **Contact** Wells Fargo Employee Care at ███████████, to notify them that you can return to work, whether you have any work restrictions, and the specific date that your medical release is effective, so that Wells Fargo Leave Operations can begin the reassignment process.

## Questions?

Call Employee Care at ███████████████████████, option 2. ████████████████████████, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time Zone.

Call Employee Assistance Consulting (EAC) if you require confidential, individual consultation or a referral for personal and work-related concerns.  EAC is available by calling ███████████████████████, option 4. EAC services are available 24 hours a day, 7 days a week.

Sincerely,


Displacement Operations
Human Resources


Cc: Official Personnel File, N9160-01S ███████████████

Exhibit T Contents

T-1 Claim Acknowledgment Letter (90-Day Determination Deadline: Oct. 11, 2025; Extension Notice Required in Writing)

T-2 Megan O'Hara Email — Confirms Receipt of Claim and Oct. 11, 2025 Deadline; Offers to Re-Send Secure Email Acknowledgment

T-3 Plaintiff Follow-Up Email (Oct. 13, 2025) — Notice That Decision/Extension Not Received; Request for Immediate Status Update

T-4 Zix Secure Email Header/Portal Screenshot — "Received Oct. 14, 2025 9:03 AM" (Secure Delivery Evidence)

T-5 SCPPlan.Admin (Christi) Email — Attaches/Re-Sends Sept. 30, 2025 Claim Response; "Sent Securely Using Zix" Banner

T-6 SCPPlan.Admin (Christi) Email — States Sept. 30, 2025 Response Was Delivered by Secure Email (Not FedEx) and Provides FedEx Tracking No. 3942 ███ 5352 for Later Shipment

T-7 FedEx Tracking Screenshot (No Signature Requested / Delivery Status)

July 14, 2025

VIA EMAIL ONLY: leslie.gottlieb@verizon.net

Leslie Gottlieb

██████████████████████

████████████

RE: Claim Acknowledgment Letter

Dear Leslie:

The purpose of this letter is to acknowledge the receipt of your written claim under the Wells Fargo & Company Severance Plan (the "Plan") on July 14, 2025. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended,

which means the Plan's claims process is structured to comply with certain legal requirements. The Plan provides that we have up to 90 days to respond to claims. The Plan further provides that we may notify you that additional time (not to exceed 90 days from the end of the initial period) is needed to review your claim, stating the reason why the extension is needed and the new due date.

The Plan Administrator (the Head of Human Resources) has delegated the initial review of your claim for Plan benefits to Wells Fargo's Separation Services Group. As a result, I have been assigned to review your claim. You can expect to receive a response to your claim no later than October 11, 2025 unless you are notified in writing prior to that date that additional time is needed to complete a thorough review of your claim.

Sincerely,

Megan O'Hara

Severance Plan Claim Reviewer

For the Wells Fargo Severance Plan Administrator

Hello Leslie,

Thank you for reaching out.  We are in receipt of your claim, and I was assigned as the claim reviewer.  You were sent a claim acknowledgment letter via a secure email on July 14, 2025.  This email provided you with further information regarding the claim review process and timeline.  If for some reason you are unable to locate the secure email from Wells Fargo that was sent on that date, please let me know and I will resend it to you via a secure email.

As a reminder the Plan has 90 calendar days to respond to your claim and the deadline for our response is <u>October 11, 2025</u>.  My hope is that I will be able to conclude my review and respond prior to the end of the month.

Please let me know if you have additional questions.

Thank you,

Megan O'Hara, SPHR

Human Resources l Separation Services Group l Severance Claims

Wells Fargo Human Resources  |  11625 N Community House Rd  |  Charlotte, NC  28277

MAC:  D1185-032

Telephone#: 980.270.8009Office  | 877.839.6371 Fax

**megan.ohara@wellsfargo.com**

Pronoun: She/Her/Hers

This email message is being sent solely for use by the intended recipient(s) and may contain confidential and/or restricted information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by phone or reply by email, delete the original message and destroy all copies.  Thank you.

Dear Ms. O'Hara,

I am following up regarding my severance benefits claim submitted on **July 14, 2025**, under the **Wells Fargo & Company Severance Plan** (Employee ID ▮▮▮▮▮▮▮).

In your prior correspondence, you confirmed receipt of my claim and stated that the Plan had **90 calendar days** to issue a response, with a deadline of **October 11, 2025**. You also noted that your **hope was to conclude the review and respond prior to the end of September**. As of today, **October 13, 2025**, I have not received a written decision, update, or notice of extension.

As you are aware, the **Severance Plan is governed by ERISA**, which requires plan administrators to provide a written determination within the prescribed timeframe or to communicate any need for an extension in advance. The absence of either places the Plan **out of compliance with ERISA's procedural requirements** and has left my claim unresolved beyond the stated review period.

At this point, I respectfully request **immediate confirmation** of the current status of my claim and the **specific date** when I can expect to receive the Plan's written determination. Given that both the **ERISA review period** and your own stated timeline have now passed, I trust this matter will be addressed without further delay.

I have copied **Mr. Charles Scharf** and **Ms. Bei Ling** to ensure senior leadership is aware that this claim remains pending past the required timeframe and previous internal commitments.

Thank you for your prompt attention. I look forward to your written response no later than **October 16, 2025**.

Sincerely,
**Leslie S. Gottlieb**
▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮
leslie.gottlieb@verizon.net
▮▮▮▮▮▮



RE: Immediate Attention Required – Severance Claim Response Overdue

leslie.gottlieb@verizon.net

Last Sign In: Oct 14, 2025 5:04 PM

**Received:**Oct 14, 2025 9:03 AM

**Expires:**Nov 13, 2025 10:03 AM

**From:**scpplan.admin@wellsfargo.com

**To:**leslie.gottlieb@verizon.net

**Cc:**

**Subject:**RE: Immediate Attention Required – Severance Claim Response Overdue

**Attachments:**

This message was sent securely using Zix ®

Hi Leslie,

Thank you for your email. I've attached the claim response that Megan sent on September 30, 2025. Please let me know if you encounter any issues opening the file.

 Thank you,

Christi

On behalf of the Wells Fargo Severance Plan Administrator

Exhibit_T-4 Page 5 of 8

Outcome of Your Severance Claim

From: SCPPlan.Admin (scpplan.admin@wellsfargo.com)

To:    leslie.gottlieb@verizon.net

Date: Tuesday, September 30, 2025 at 05:07 PM EDT

**New Zix secure email message from Wells Fargo**

**Do not reply to this notification message;** this message was auto-generated by the sender's security system.

**Open Message**

From the Register Account Page:

   a) Enter your email address if not already shown,
   b) Create a passphrase for the secure email site and click Register.

To view the secure message or reply to the sender, click **Open Message.**

The secure message expires on Oct 30, 2025 @ 09:07 PM (GMT).

For assistance, review the support site.

This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Do not include confidential or sensitive information in your reply to this notification as it will not be encrypted. Thank you for your cooperation.

On Tuesday, October 14, 2025 at 05:38:05 PM EDT, SCPPlan.Admin <scpplan.admin@wellsfargo.com> wrote:

Leslie,

The September 30, 2025 claim response was not sent via FedEx; it was delivered through secure email, and therefore no physical package was sent.

For the current shipment, I've requested that delivery require a signature. The new FedEx tracking number is 3942 ███ 5352.

Thank you,
Christi





**Megan O'Hara**
Severance Plan Claim Reviewer

**Wells Fargo Human Resources**
**Global Employee Relations**

11625 N Community House Road
Charlotte, NC 28277

September 30, 2025

Via: Email Only – leslie.gottlieb@verizon.net

Leslie Gottlieb

RE:  Severance Plan Claim – Leslie Gottlieb

Dear Leslie,

I have reviewed the claim for benefits under the Wells Fargo & Company Severance Plan (the "Plan") that was received on July 14, 2025, by the Plan Administrator and have reached a determination, as outlined below.  Unless otherwise stated, all capitalized terms referred to in this response are defined in the Plan. This response will address your claim under the Plan; it will not discuss any other concerns.

As I understand your claim, you are requesting benefits under the Plan due to your belief that your displacement while on a leave of absence makes you eligible for severance benefits.

In evaluating claims under the Plan, it is my responsibility as the reviewer, to consider the facts of the claim and apply the relevant Plan provisions in reaching a determination.  My response references sections of the Wells Fargo & Company Severance Plan Summary Plan Description (Plan SPD), detailed below and enclosed for your convenience.

**Relevant Plan Provisions**
There are multiple sections of the Plan that relate to the information you presented in your claim:

- "Disqualifying events" (page F-3 of the Plan SPD)
- "Qualifying Event" (page F-4 of the Plan SPD)
- "Qualified Medical Leave Displacements" (page F-5 of the Plan SPD)

These items (or relevant portions thereof) from the Plan are set forth below for ease of reference:

**Disqualifying events (Plan SPD)**

If you are a participant in the Plan, you become immediately ineligible for severance pay and benefits under the Plan if any of the following occur:

> j. You are not on an approved leave or you are on an approved leave beyond 26 weeks subject to the company's leave of absence requirements applicable to approved leaves.

© 2025 Wells Fargo Bank, N.A. All rights reserved.

**Qualifying Event (Plan SPD)**

The following events may qualify you for Severance Pay under the Plan — a Position Elimination, a Substantial Position Change, a USERRA-Related Displacement, an Expatriate/Rotational Assignment Displacement, or a Qualified Medical Leave Displacement. If you think you qualify for Severance Pay because of a Substantial Position Change, you must file a claim within 30 days of the date you are advised of the change to your current job. For more information, see the "Filing a claim" section on page F-8.

**Qualified Medical Leave Displacements (Plan SPD)**

A Qualified Medical Leave is a medical leave certified by Wells Fargo or its leave administrator that has no job reinstatement rights or continues beyond 26 weeks and does not exceed 24 months.

If you have been released to return to work following a Qualified Medical Leave and your prior position has been eliminated, replaced, or is no longer available, you are expected to actively engage in good faith with the job reassignment process as defined in Wells Fargo policies. Under such circumstances, if you are not offered or placed in a position with Wells Fargo, or you are offered a position that constitutes a Substantial Position Change, you may be eligible for Severance Pay under the Plan.

**Facts, discussion, and determination**

Wells Fargo (WF) Human Capital Management System (HCMS) records reflect that you were employed as a Senior Technology Business Systems Consultant working in Strategic Execution when on January 18, 2024, you initiated a medical leave of absence.  Subsequently, on February 6, 2024, some employees within your department received notice of a qualifying event - that their positions were being affected by a position elimination.  According to the WF HCMS records, you were on a Wells Fargo approved Medical Leave at the time the displacement notification went to active employees.

As previously stated, your claim contends that you are eligible for benefits under the Plan despite being on a leave of absence at the time of your displacement. Our records indicate you were notified of the position elimination via a letter mailed to you on February 6, 2024. A review of your leave history confirms that at the time you received notice of a Qualifying Event (i.e., February 6, 2024), you were on protected medical leave and had not yet been medically released to return to work.  Additionally, the letter you received explained the process for those impacted by displacement while on medical leave of absence. The letter stated that, "[s]ubject to the Extended Absence Policy, your employment with Wells Fargo will be preserved while you are on approved leave." Since that time, you have remained on approved leave. As stated in the SPD regarding Disqualifying events, you became immediately ineligible for severance pay and benefits under the Plan as you are "on approved leave beyond 26 weeks subject to the company's leave of absence requirements applicable to approved leaves." (See page F-3, F-4(j) of the Plan SPD).

As referenced in the letter you previously received, "if you are released to return to work, after 26 weeks but prior to the expiration of Wells Fargo's 24-month Extended Absence policy period, inform both Lincoln Financial Group and Employee Care of your expected return status and date. You may be eligible to participate in an unpaid job reassignment process at that time.  You will need to contact Lincoln Financial Group or Employee Care to confirm your ability to return to work. The job reassignment process will not begin until the medical release is received and confirmed, which includes the return date and any restrictions, if applicable." This language aligns with the requirements of the Qualified Medical Leave Displacement outlined in the Plan SPD.

Based on my review of your claim and the relevant facts, I find that your request for benefits under the Plan is not supported by the terms of the Plan. The Plan is governed by the terms of ERISA and must be administered uniformly in accordance with its written terms.

2 / 3

For the reasons outlined above, I must deny your request for benefits under the Plan. You can appeal this decision within 60 days of receiving this letter by submitting a written request to the Plan Administrator at the following address:

Wells Fargo & Company Severance Pay Plan
Attention: Severance Plan Administrator
██████████████
███████████████████████████████████████████
or email at: ██████████████████████████

In addition, you have the right to receive, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits. If the Appeals Committee upholds the denial of your claim for severance benefits, you have the right to bring a civil action under section 502(a) of ERISA.

Sincerely,
Megan O'Hara
Severance Plan Claim Reviewer

Enclosures: Wells Fargo & Company Severance Summary Plan Description
cc:  Plan Administrator

3 / 3

**Exhibit-V**

**Verbal Admission**

I, Leslie S. Gottlieb, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. June 20, 2024 (Mark – Displacement Team). On June 20, 2024, I spoke by telephone with "Mark," a Wells Fargo Displacement Team representative (            ). During that call, Mark stated words to the effect that severance required "coming off" long-term disability ("LTD") before 24 months, and Mark also told me, "You will never work at Wells Fargo again." I requested that Mark identify any written Plan provision supporting a "24-month" severance requirement, but no Plan language or written policy supporting that statement was provided to me.

2. In or about July 2024 (Tami Burnham – Employee Relations). In or about July 2024, I spoke by telephone with Tami Burnham, Escalations and Experience Lead for Global Employee Relations. Burnham verbally confirmed to me that Mark's statement about a "24-month" requirement was incorrect and that no such requirement existed in the written Severance Plan. Burnham also stated that Mark would be subject to reprimand for providing inaccurate information.

3. November 13, 2024 (Laquisha Hill – Senior Employee Relations Consultant). On November 13, 2024, I spoke by telephone with Laquisha Hill, Senior Employee Relations Consultant, at            Hill told me that long-term disability "expires after 24 months," that I "would no longer be eligible for severance then," and that my employment "terminates then." Hill also stated she was unsure whether I would be eligible for severance if released after approximately 23 months and that "Employee Care needs to look into it." I received no follow-up from Employee Care

4. September–October 2025 (Denial delivery/timing). A severance claim denial letter dated September 30, 2025, was not received by me until October 14, 2025, after I requested a status update. The denial referenced a "26-week rule."

Executed on January 23, 2026.

_Leslie S. Gottlieb_ (signature)

Leslie S. Gottlieb
464 Liberty Street, Apt 102A
Little Ferry, NJ 07643

**Exhibit Y – Medical Treatment Timeline and Charges (Summary)**

This summary is compiled from Plaintiff's medical records and billing records from Memorial Sloan Kettering Cancer Center ("MSK") and Hackensack University Medical Center / John Theurer Cancer Center ("Hackensack").

It includes Plaintiff's diagnostic workup/testing performed in early January 2024, and the related diagnostic charges are included in the billed-charge totals summarized below.

**Inpatient treatment periods (updated MSK line)**

| Facility | Treatment period | Description |
|---|---|---|
| MSK | Jan 3, 2024 – Mar 16, 2024 | Diagnostic testing on Jan 3, 2024; AML diagnosis on Jan 10, 2024; inpatient oncology treatment Jan 17 – Mar 16, 2024. |
| Hackensack | Apr 19, 2024 – May 14, 2024 | Inpatient stem cell transplant hospitalization. |

**Documented billed charges (through January 2026)**

| Facility | Charge category | Dates | Amount |
|---|---|---|---|
| Hackensack | Pre-admission evaluation/testing | Mar 26, 2024 – Apr 18, 2024 | $55,305.05 |
| Hackensack | Inpatient hospitalization | Apr 19, 2024 – May 14, 2024 | $413,993.66 |
| Hackensack | Post-transplant outpatient services | Apr 17, 2024 – Nov 12, 2025 | $262,989.85 |
| Hackensack | Subtotal | — | $732,288.56 |

| Facility | Charge category | Dates | Amount |
|---|---|---|---|
| MSK | Diagnostic testing + inpatient oncology treatment (includes diagnosis 1/10) | Jan 3, 2024 – Mar 16, 2024 | $1,041,671.10 |
| MSK | Physician services | — | $57,310.00 |
| MSK | Subtotal | — | $1,098,981.10 |

**Summary of medical charges to date**

| Total medical charges | Amount |
|---|---|
| Total (through Jan 2026) | $1,831,269.66 |

These figures reflect documented billed charges through January 2026; Plaintiff's medical treatment is ongoing and additional billed charges continue to accrue after January 2026.

2

# ERISA plans sponsored by Wells Fargo

| Plan name | Plan coverage option | Plan number | Service provider or insurer |
|---|---|---|---|
| Wells Fargo & Company Health Plan (for Eligible Active Employees and Their Dependents)[1] | Copay Plan with Health Reimbursement Account (HRA)* (Self-insured[2])<br><br>* Including Out of Area Coverage | 537 | **Medical**<br>UnitedHealthcare<br>1-800-842-9722<br><br>**Prescriptions**<br>Express Scripts<br>1-855-388-0352<br><br>**HRA claims**<br>HealthEquity<br>1-877-924-3967 |
| Wells Fargo & Company Health Plan (for Eligible Active Employees and Their Dependents)[1] | Health Savings Account (HSA) Plan*,[3] (Self-insured[2])<br><br>* Including Out of Area Coverage | 537 | **Medical**<br>Anthem Blue Cross Blue Shield<br>1-866-418-7749<br><br>UnitedHealthcare<br>1-800-842-9722<br><br>**Prescriptions**<br>Express Scripts<br>1-855-388-0352 |
| Wells Fargo & Company Health Plan (for Eligible Active Employees and Their Dependents)[1] | Local Copay Plan with Health Reimbursement Account (HRA) (Self-insured[2]) | 537 | **Medical**<br>Anthem Blue Cross Blue Shield<br>1-866-418-7749<br><br>Centivo<br>1-833-666-1506<br><br>UnitedHealthcare<br>1-800-842-9722<br><br>**Prescriptions**<br>Express Scripts<br>1-855-388-0352 |
| Wells Fargo & Company Health Plan (for Eligible Active Employees and Their Dependents)[1] | Flexible High-Deductible Health Plan (Self-insured[2]) | 537 | **Medical**<br>Anthem Blue Cross Blue Shield<br>1-866-418-7749<br><br>UnitedHealthcare<br>1-800-842-9722<br><br>**Prescriptions**<br>Express Scripts<br>1-855-388-0352 |
| Wells Fargo & Company Health Plan (for Eligible Active Employees and Their Dependents)[1] | HMO — Kaiser California (Insured[4]) (Northern and Southern California) | 537 | Kaiser Permanente<br>1-800-464-4000 |
| Wells Fargo & Company Health Plan (for Eligible Active Employees and Their Dependents)[1] | HMO — Kaiser Colorado (Insured[4]) | 537 | Kaiser Permanente<br>1-800-632-9700 |
| Wells Fargo & Company Health Plan (for Eligible Active Employees and Their Dependents)[1] | POS Kaiser Added Choice — Hawaii (Insured[4]) | 537 | Kaiser Hawaii<br>1-800-966-5955 |
| Wells Fargo & Company Health Plan (for Eligible Active Employees and Their Dependents)[1] | HMO — Kaiser Mid-Atlantic (Insured[4]) | 537 | Kaiser Permanente<br>D.C. area<br>301-468-6000<br>Outside D.C. area<br>1-800-777-7902 |

1. This plan will be known as the Wells Fargo & Company Health Plan (or the Health Plan) throughout this *Benefits Book*.
2. "Self-insured" means benefits are paid for by the plan through a trust. The identified service provider provides claims administrative services and is the claims and appeals fiduciary.
3. Your individual HSA is not part of the ERISA plan and is not sponsored by Wells Fargo. See "Appendix C: Health Savings Accounts" for more information about your HSA.
4. "Insured" means benefits are fully insured and paid for by the insurer, which may be an HMO.